645 P.2d 448

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Clyde E. JOHNSTON,
Defendant-Appellant.**

**No. 5525.**

Court of Appeals of New Mexico.

April 27, 1982.
Certiorari Denied June 17, 1982.

Dale B. Dilts, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Heidi Topp Brooks, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WALTERS, Chief Judge.

Defendant appeals multiple convictions and sentences for conspiracy, armed robbery, aggravated burglary and assault with intent to commit a violent felony, some with firearm enhancement. The convictions arose out of two armed robberies committed by the defendant and other co-defendants; the other crimes were ancillary.

Defendant lists ten points in his brief. Another issue, incorporating co-defendants' appeal contentions, was raised in the docketing statement, but is not briefed. It is, therefore, abandoned. *State v. Gonzales*, 96 N.M. 556, 632 P.2d 1194 (Ct.App.1981).

The issues discussed are:

1. Error in denying defendant's motion to dismiss for lack of a speedy trial (Point I);

2. Error in failing to sever the defendants (Point II);

3. Error in failing to sever the charges arising from one robbery from the charges arising from the other robbery (Point III);

4. Error in failing to grant a mistrial when the jury could have seen the defendants in cuffs and chains before trial, and did see them in cuffs and chains when the verdict was rendered (Points IV and VIII);

5. Error in failing to grant a mistrial when the prosecutor "flashed" a mug shot in front of the jury before it was admitted into evidence (Point V);

6. Insufficient evidence of conspiracy (Point VI);

7. Insufficient evidence that defendant was the one who committed one of the robberies charged (Point VII);

8. Error in giving defendant four firearm enhancements (Point IX);

9. Error in failing to merge the charges (Point X).

## I. SUFFICIENCY OF THE EVIDENCE.

■ A review of the facts is necessary to reach the substantial evidence issues. Defendant asserts there was no evidence of any agreement on which to support a conspiracy charge; that the evidence showed no more than his "mere participation in the crime[s]." He contends further that there was no evidence that he was a perpetrator of one of the robberies, other than the victim's tentative recognition of his photo and his arrest with the other participants on the evening of the crimes. Defendant does not view the evidence in the light most favorable to support the convictions, *State v. Lankford*, 92 N.M. 1, 582 P.2d 378 (1978), and he ignores almost all unfavorable evidence.

Mr. Fitzgerald was robbed at a Plateau gas station, where he worked, at about 8:30 in the evening. Ms. Stinson was robbed in the bedroom of her home at about 11:15 on the same night.

Fitzgerald was at work when a white male and a "Chicano" male came in. The white male asked for a gas can. The Chicano put a gun on the counter and asked if it would pay for the gas can. Fitzgerald knew then it was a robbery. He took out the cash box and gave the men a box to put the money in. They asked for more money and cigarettes, at the same time putting a gun to his head and threatening to kill him. A black man then came into the station; Fitzgerald gave the men cigarettes and the money from his pockets. At that point a customer arrived and the men left.

Fitzgerald was unable to identify the defendants as the robbers in court, except to

say that defendant Lopez looked like "the Chicano." A police officer showed Fitzgerald several photo arrays two days after the incident, each array consisting of about five photos of men with characteristics similar to the suspects. The photos were placed on a coffee table. The officer, not interested in tentative identifications, told Fitzgerald not to touch the photos but to pick out those of the men he was reasonably positive had robbed him. In one of the quickest identifications the officer had ever seen, Fitzgerald identified Johnston as the white male, co-defendant Lopez as the Chicano, and co-defendant Allen as the black.

Concerning the second incident, Ms. Stinson and her infant son were asleep in her bed when she was awakened by the rattling of the glass in her back door. She then heard men talking about taking her television set. The light came on in her bedroom and two Caucasian men (one of whom was Spanish) entered, both carrying guns. The Spanish male, identified by Stinson as co-defendant Lopez, told the other man, later identified as defendant, to go into another bedroom to "get stuff." Defendant came back and said there was nothing there. Lopez asked where Ms. Stinson kept her valuables; she told them everything was on her dresser but that she had nothing valuable. They took her Timex watch and became angry because she had no valuables.

Defendant left the bedroom and came back with a box which, at the direction of his companion, he broke open. Finding nothing in it, he shot his gun toward Ms. Stinson's bed; Lopez asked if she wanted her baby shot. Lopez then fired his rifle near to Ms. Stinson's head and put his rifle to her knee in a threatening manner. He sent defendant out to the car for his brother who, he said, would have no hesitation in killing her. Defendant returned with another Spanish male, whom Stinson identified as another co-defendant, Vallez. The three men removed two television sets, an old radio, the watch, and some leather coats and other clothing. When a police car passed by, the men left. Ms. Stinson, looking out the window after they had gone, saw four men in the car leaving her drive-

way. She recognized the three who had been in her house, and saw with them another whom she knew to be a black man because of his hair and appearance.

Ms. Stinson made in-court identifications of Johnston as the white male; co-defendant Lopez as the first Spanish male, and co-defendant Vallez as the Spanish man who came in later. She also made out-of-court identifications of the three.

A few hours after defendant and his companions had left her home, a car matching the description Ms. Stinson gave was stopped by police. In it were the four co-defendants, and it held guns and some of Ms. Stinson's stolen property.

The foregoing evidence is substantial to support this defendant's convictions, either as a principal or an aider and abettor, *State v. Roque*, 91 N.M. 7, 569 P.2d 417 (Ct.App. 1977), for: (a) armed robbery of Fitzgerald, with firearm enhancement; (b) armed robbery of Stinson, with firearm enhancement; (c) aggravated burglary of Stinson's residence, with firearm enhancement; and (d) assault with intent to commit a violent felony on Stinson, with firearm enhancement.

█ The gist of conspiracy is the agreement, and such agreements are rarely susceptible of direct proof. Consequently, circumstantial evidence is sufficient to support a conspiracy conviction. *State v. Thoreen*, 91 N.M. 624, 578 P.2d 325 (Ct.App.1978), and cases cited therein. The evidence we have set forth relating to the cooperative actions of the defendants, and all reasonable inferences which may be drawn from that evidence, was more than sufficient to justify the jury's convictions of conspiracy to commit armed robbery, and conspiracy to commit aggravated burglary.

II. SPEEDY TRIAL

█ Referring to the four-factor balancing test set out in *State v. Tafoya*, 91 N.M. 121, 570 P.2d 1148 (Ct.App.1977), defendant claims he was denied his right to a speedy trial. We are required to review (1) the length of the delay, (2) the reason for the

delay, (3) defendant's assertion of his right, and (4) any prejudice attaching to the delay. Defendant does not raise a Rule 37 (N.M.R.Crim.P., N.M.S.A.1978 (1980 Repl.)), issue. Although the record shows the State's Rule 37 petition for an extension of time within which to try defendant, and an order of the supreme court taking the petition under consideration and continuing it, the order granting extension is not in the record.

The State urges that defendant's contention be denied because he did not see to it that this court received a transcript of the hearing of the motions. Because defendant's speedy trial issues may nevertheless be decided on the merits, despite the absence of a transcript we review the question.

The delay was either from January 27, 1981, (when defendant was arrested) or from February 5, 1981, (when he was indicted) to September 22, 1981, when trial started—a period of less than eight months. The delay was long enough to trigger the speedy trial issue. *Tafoya, supra; State v. Mascarenas*, 84 N.M. 153, 500 P.2d 438 (Ct. App.1972). The record shows that delay was occasioned by defendant's difficulties in obtaining counsel, by the absence of some of the defendants, and by absence from the state of a co-defendant's attorney. When trial and appellate counsel for this defendant first entered his appearance after the various delays, trial was held less than a month afterward. Defendant asserted his right to a speedy trial; his motion was granted; his motion to dismiss was denied. There was and is no showing of prejudice to this defendant by any delay.

*State v. Powers*, 97 N.M. 32, 636 P.2d 303 (Ct.App.1981), discusses the factors to be considered and the balancing test; nevertheless it held that an absence of actual prejudice outweighed an unexplained eighteen-month delay. *United States v. Mac-Donald*, —— U.S. ——, 102 S.Ct. 1497, 71 L.Ed.2d 696 (United States Supreme Court, announced 1982), interprets the right to a speedy trial as not primarily intended to prevent prejudice to the defense caused by the passage of time. Rather, it is designed to minimize lengthy incarceration prior to trial, to reduce impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

In this case, there was no lengthy unexplained delay. Much of it resulted from the defendant's failure at the outset to meet the requirements for representation by the Public Defender, followed by his neglect in making arrangements for independent counsel. None of the delay was for recognized oppressive reasons. When all of the facts are considered in conjunction with the absence of any showing of prejudice, or other matters touched on in *MacDonald, supra*, the scales are tipped in favor of the explained delay. Defendant was not unconstitutionally denied the right to a speedy trial.

## III. SEVERANCE OF TRIALS

■ Trial of the defendants was properly joined under N.M.R.Crim.P. 11(b) & (c), N.M.S.A.1978 (1980 Repl.). Conspiracy was charged against all and, as is evident from our discussion of the evidence, it would have been difficult, if not impossible, to separate the proof as to each defendant without leaving inunderstandable gaps in the testimony. Severance under N.M.R. Crim.P. 34, N.M.S.A.1978 (1980 Repl.), depends upon a showing of prejudice, and the trial court's decision not to sever will be overturned only for an abuse of its discretion. *State v. Baca*, 85 N.M. 55, 508 P.2d 1352 (Ct.App.1973).

■ Defendant claims prejudice in (1) the amount of time it took to conduct the trial, considering the involvement of so many lawyers; (2) the fact that defendant was associated with the other defendants at the time of arrest; (3) the fact that witnesses for the other defendants testified to things irrelevant to defendant, and (4) the insufficiency of the evidence to convict him. We have already decided the sufficiency of the evidence.

Defendant is mistaken when he argues that he was not identified as a participant in the Plateau robbery; see our review of Fitzgerald's identification. Defendant argued the asserted confusion between defendants and the numerous charges against them to his fullest advantage during closing argument. He urged a jury finding of mistaken identity on the basis of discrepancies in the details of the items of stolen property found at the time of arrest, and discrepancies in the descriptions of his clothing furnished by the State's witnesses. Even in a separate trial, the fact of his arrest with the other defendants would have been admissible to show identity. N.M.R.Evid. 404(b), N.M.S.A.1978.

Other defenses and other witnesses may have been presented that defendant would not have preferred. But the defenses were not inconsistent or antagonistic. There were alibi witnesses, and witnesses who testified to Ms. Stinson's credibility. The defendant's complaint that the co-defendants' witnesses were bad characters who prejudiced him is answered by *State v. Aull*, 78 N.M. 607, 435 P.2d 437 (1967), where it was held that the bad reputation of co-defendants does not require severance.

Finally, although there were four defendants and ultimately six charges submitted to the jury, the evidence was not so complex that the jury could not understand it or relate it to the proper defendant and to the proper charge. Indeed, in our view it was remarkably uncomplicated evidence. The trial court did not err in failing to grant a severance of defendants.

## IV. SEVERANCE OF CHARGES

■ The charges here were properly joined; they were of the same or similar character. N.M.R.Crim.P. 10, N.M.S.A.1978 (1980 Repl.). Defendant's claim of prejudice from evidence tending to show co-defendant Allen's participation is without merit; all of that evidence also was relevant to show defendant's identity under N.M.R.Evid. 404(b), *supra*. There was no prejudice entitling defendant to a severance of charges. *See State v. Schifani*, 92 N.M.

127, 584 P.2d 174 (Ct.App.1978); *State v. McCallum*, 87 N.M. 459, 535 P.2d 1085 (Ct. App.1975).

## V. THE "CUFFS AND CHAINS" ISSUES

■ This contention is frivolous. There is no evidence that the jury saw any of the defendants in cuffs and chains before it reached a verdict. *State v. Foster*, 83 N.M. 128, 489 P.2d 408 (Ct.App.1971). Any such view after the verdict was reached was harmless. The objection at the time of verdict was not based on any rights of these defendants, but was directed, instead, to what the jury might think of the Public Defender's other clients.

This defendant and two others felt that an inquiry of the jurors regarding what they may have observed, or a cautionary instruction on their possible view of defendants in chains and handcuffs, would exacerbate the perceived situation. Defendant did not move after trial to prove that the jury was prejudiced because its members did, in fact, see the defendants in their restraints. *Cf. State v. Manus*, 93 N.M. 95, 597 P.2d 280 (1979). We cannot say the trial court erred in denying the motion for mistrial on these claimed prejudicial incidents.

## VI. THE "MUG SHOT"

■ Defendant complains specifically that a police photo was flashed within the jury's view before it was admitted. He asks us to invoke the language of *State v. Gutierrez*, 93 N.M. 232, 599 P.2d 385 (Ct. App.1979), which he interprets as forbidding the use of photo arrays which include "mug-shots" in all criminal trials.

There are many reasons for disagreeing with defendant's contention, not the least of which is his failure to have the exhibits called up. *State v. Romero*, 87 N.M. 279, 532 P.2d 208 (Ct.App.1975). Second, according to the tapes and the briefs, the photo was not of the defendant, but of a co-defendant. How defendant was prejudiced is not readily apparent. Third, the basis of the objection below was that the photo was

flashed before it was admitted into evidence. The trial court believed that the flashing was unintentional and that if the array was subsequently admitted the incident would be harmless. The photo was introduced and its admission is not challenged. Fourth, *Gutierrez* is not as absolute as defendant believes. *See State v. Candelaria*, 97 N.M. 64, 636 P.2d 883 (Ct. App.1981). The photos in *Gutierrez* were not offered for purposes of identification, but apparently only to influence the jury by showing defendant's prior criminal record. Here identity was the key to the defense; the photo arrays were properly admitted. *State v. Candelaria, supra.* Fifth, the photos evidently bore no indicia of identification as "mug shots"; they were made after defendants were arrested; they did not suggest a prior criminal record. *Gutierrez, supra; cf. State v. Jacobs*, 91 N.M. 445, 575 P.2d 954 (Ct.App.1978).

## VII. FIREARM ENHANCEMENT

 The trial court imposed firearm enhancements on the three sentences connected with the crimes against Stinson. Defendant seems to concede that one would not have been improper, nor would another enhancement on the charges based on the Plateau incident. He argues, however, that (1) the firearm was not "used" in entering the Stinson house; (2) the crimes charged already were enhanced crimes because committed with use of a deadly weapon, and (3) the underlying crimes were really "one continuing incident." These claims are answered, respectively, by *State v. Trujillo*, 91 N.M. 641, 578 P.2d 342 (Ct.App.1978), *State v. Gonzales*, 95 N.M. 636, 624 P.2d 1033 (Ct.App.1981), and *State v. Kendall*, 90 N.M. 236, 561 P.2d 935 (Ct.App.), rev'd on other grounds, 90 N.M. 191, 561 P.2d 464 (1977).

## VIII. MERGER

As his last point, defendant asks us to hold that the substantive crimes relating to the Stinson incident and the sentences thereon should have been merged. Since different evidence was required for each of the crimes charged, merger of the charges would not have been appropriate. *State v. Sandoval*, 90 N.M. 260, 561 P.2d 1353 (Ct. App.1977). This issue is without merit.

Defendant's convictions and sentences are AFFIRMED.

WOOD, J., concurred only in the result.

HENDLEY, J., concurs.