687 P.2d 96

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Jessie ROMERO, Defendant-Appellant.**

**No. 7673.**

Court of Appeals of New Mexico.

Aug. 14, 1984.

Thomas J. Horne, Thomas J. Horne, P.C., Albuquerque, for defendant-appellant.

Paul Bardacke, Atty. Gen., Barbara F. Green, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Judge.

Convicted of burglary and larceny under $100.00, defendant appeals, contending his trial was delayed so long that he was entitled to dismissal of the charges. We discuss (1) speedy trial, and (2) NMSA 1978, Crim.P. Rule 37.

### Speedy Trial

The indictment was filed October 13, 1982; the trial began January 4, 1984. The speedy trial claim is not based on the time lapse between these dates. Rather, the claim is based on the time lapse between arraignment on October 25, 1982 and October 5, 1983. The October 5, 1983 date is the termination date of the speedy trial claim because that was an available trial date which defendant declined. In addition, a substantial portion of the trial delay after October 5, 1983 is attributable to defendant's non-cooperation in connection with an examination by a psychiatrist. *See State v. Mascarenas*, 84 N.M. 153, 500 P.2d 438 (Ct.App.1972).

The eleven and one-half months involved in the speedy trial claim was presumptively prejudicial and this triggered an inquiry into the four factors which must be balanced in deciding a speedy trial issue. *State v. Johnston*, 98 N.M. 92, 645 P.2d 448 (Ct.App.1982); *State v. Tafoya*, 91 N.M. 121, 570 P.2d 1148 (Ct.App.1977). Those four factors are length of delay, reason for the delay, defendant's assertion of the right and prejudice to the defendant. *State v. Tafoya.*

As we explain in discussing the issue under Crim.P. Rule 37, the delay and the reason for the delay are the state's responsibility. Defendant, however, raised no speedy trial issue until his motion to

dismiss, filed September 6, 1983, one month before the expiration of the time period on which defendant relies. *Barker v. Wingo*, 407 U.S. 514, 531–32, 92 S.Ct. 2182, 2192–93, 33 L.Ed.2d 101 (1972) states:

> Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

The claim of prejudice stated in defendant's brief is: "[A] Dr. Litman, who examined the Appellant on January 4, 1983 * * would have been able to offer information regarding the Appellant's mental state, which was placed at issue by Appellant's Trial counsel." The contention is that Dr. Litman saw and examined defendant on January 4 and March 4, 1983 at the penitentiary; that counsel learned, on September 1, 1983, that defendant might be a schizophrenic; that counsel attempted to telephone Dr. Litman on September 22, 1983 and was informed that Dr. Litman no longer worked at the penitentiary; that Dr. Litman was working in Washington, D.C. and that the penitentiary did not have Dr. Litman's address or telephone number in Washington, D.C. Counsel's affidavit asserts "Dr. Litman could have testified as to Mr. Romero's mental state immediately after the arrest of Mr. Romero on the above-styled Indictment."

The claim of prejudice goes to the defense of insanity at the time of commission of the offenses and inability of defendant to form a specific intent. These defenses were first asserted by pleadings filed September 12, 1983. *See* NMSA 1978, Crim. P.R. 35(a) and (e) (Cum.Supp.1984). We assume (the record is silent) that Dr. Litman was a person qualified to testify as to defendant's mental condition. There is nothing indicating to what Dr. Litman would testify; there is nothing indicating that Dr. Litman's notes could not be obtained from penitentiary officials; there is nothing indicating that Dr. Litman (who we assume is a mental health professional) could not be located in Washington, D.C., or that counsel made any effort to locate him; and no more than a suggestion that similar information could not be obtained from other mental health professionals. The entire claim is based on no more than the possibility of prejudice. *See State v. Powers*, 97 N.M. 32, 636 P.2d 303 (Ct.App. 1981).

Balancing defendant's delay in asserting his right to a speedy trial and his speculative showing that the absence of Dr. Litman might prejudice the defense against the state's responsibility for the delay of eleven and one-half months, the trial court did not err in denying the motion to dismiss for lack of a speedy trial.

**Criminal Procedure Rule 37**

The indictment was filed on October 13, 1982. The applicable provisions of Crim.P. Rule 37 are the provisions of the rule as amended by the supreme court by order dated December 31, 1981 for cases filed on or after February 1, 1982. (*See* Judicial Pamphlet 6, Special Supplement for Amendments from July 1, 1981 through January 1, 1982.) The applicable provisions state:

> (b) Time limits for commencement of trial. The trial of a criminal case or an habitual criminal proceeding shall be commenced six months after whichever of the following events occurs latest:
>
> (1) the date of arraignment, or waiver of arraignment, in the district court of any defendant;
>
> * * * * * *
>
> (5) the date of arrest of the defendant after conditions of release have been revoked for failure to appear as required[.]

The applicable rule provided for extensions of time (Crim.P.R. 37(c)), but there were no extensions in this case. The rule (Crim.P.R. 37(d)) provided for dismissal with prejudice if there had been no extensions of time and the trial did "not commence within the time specified in Paragraph (b) * * *."

The trial, which began January 4, 1984, did not commence within six months of the arraignment on October 25, 1982. The violation of Crim.P. Rule 37(b)(1) is not disputed. The trial court denied defendant's pretrial motion to dismiss on the basis of Crim.P. Rule 37(b)(5).

On the date of arraignment, October 25, 1982, the trial court signed a release order. This order provided that "defendant * * * be released" upon compliance "with the conditions checked". The checked conditions provided for defendant's release upon execution of a bond, either cash or security, in the amount of $10,000.00. Defendant never posted this bond; he was never released. Defendant was continuously incarcerated on the charges in this case, and also incarcerated because of other matters, from the time of his arrest on the charges in this case.

The indictment charged that burglary and larceny offenses were committed on or about September 29, 1982. The record indicates that defendant was arrested on either September 28 or 29, 1982. From the date of arrest, defendant's incarceration record was:

(a) Bernalillo County Detention Center from September 28 or 29 to December 3, 1982.

(b) Reception and Diagnostic Center, Los Lunas, from December 3, 1982 to January 4, 1983. Defendant's parole, on another matter, was revoked on December 28, 1982.

(c) Penitentiary of New Mexico, Santa Fe, from January 4, 1983 to June 17, 1983.

(d) Forensic Treatment Center, Las Vegas, from June 17, 1983.

On December 17, 1982, at a time when defendant was at the Los Lunas facility, the state moved that the trial court reconsider defendant's conditions of release, alleging that defendant's whereabouts were "presently unknown to the State and the Defense" and that defendant had "made himself unavailable to his attorney * * *." The motion was heard on January 3, 1983; defendant was not present. The conditions of release were revoked "for failure to appear as required." A bench warrant was issued on January 5, 1983; it ordered defendant's arrest for failure to appear for the motion hearing of January 3, 1983.

Defendant was arrested in Albuquerque, while in the custody of the Forensic Treatment Center, on August 3, 1983. Thereafter he remained in the custody of the Bernalillo County Detention Center.

The trial court denied defendant's motion to dismiss on the basis that his failure to appear on January 3, 1983 tolled the running of time under Crim.P. Rule 37, and that the time did not begin to run until defendant's arrest on August 3, 1983. The trial court's view was that defendant should have kept his attorney advised of his whereabouts, and that defendant could not get himself into the custody of the state and then claim that custody excused defendant from being present in court.

The state seeks to uphold the trial court's ruling, but cites *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967); thus the state defends the trial court's ruling whether or not the state feels that the ruling is defensible. We have reviewed the various contentions pursuant to *State v. Maes*, 100 N.M. 78, 665 P.2d 1169 (Ct.App.1983). We identify and answer the contentions in the following numbered paragraphs.

(1) *State v. Flores*, 99 N.M. 44, 653 P.2d 875 (1982), is not applicable. *Flores* dealt with the release of an accused in violation of the trial court's order that the accused be detained on the pending charges until further order of the court. Flores was released on October 22, 1981; his failure to appear in court for a pretrial conference occurred on November 16, 1981 when he was not in custody. The state's prior error

in releasing Flores did not excuse Flores' "failure to appear" when not in custody. Defendant has been in the state's custody at all pertinent times.

(2) The trial court's release order provided that defendant was not to leave Bernalillo County without permission of the trial court and provided that defendant was to keep his attorney informed of his whereabouts. These provisions were conditions of release. "The whole purpose for 'conditions of release' is to place limitations on a person *not* in custody." *State v. Flores*, 99 N.M. at 46, 653 P.2d 875 (emphasis in original). Inasmuch as defendant was in custody at all pertinent times, the conditions of release are not applicable.

(3) Crim.P. Rule 37(b)(5) is concerned with arrest after conditions of release have been revoked for failure to appear as required. Here, conditions of release were revoked, but those conditions were not applicable because defendant was never released from custody. Utilization of non-applicable conditions of release to extend the time period for commencing trial is the type of technicality condemned in *State v. Flores*, which stated: "[N]o warrant could have been issued for the violation of nonexistent conditions of release." *Id.*, 99 N.M. at 46, 653 P.2d 875. Crim.P. Rule 37(b)(5) is not applicable because defendant never failed to appear as required by any operative condition of release.

(4) The prosecutor did not know the whereabouts of defendant. However, defendant was available to the state because defendant was in the state's custody. *See State v. Lucero*, 91 N.M. 26, 569 P.2d 952 (Ct.App.1977). There is nothing indicating the prosecutor made any effort to learn of defendant's whereabouts and there is nothing indicating the prosecutor could not have learned of defendant's whereabouts if the prosecutor had proceeded with reasonable diligence. *State v. Hernandez*, 97 N.M. 28, 636 P.2d 299 (Ct.App.1981).

Crim.P. Rule 37(b)(5) being inapplicable and the violation of Crim.P. Rule 37(b)(1) being undisputed, defendant's convictions in this case are reversed. The cause is remanded to the trial court to dismiss the indictment with prejudice. *State v. Lucero.*

**IT IS SO ORDERED.**

HENDLEY and ALARID, JJ., concur.