471 P.2d 671

STATE of New Mexico, Plaintiff-Appellee,

v.

Paul Walter SHARPE, Defendant-Appellant.

No. 470.

Court of Appeals of New Mexico.

June 5, 1970.

Charles N. Glass, Threet, Threet, Glass, King & Maxwell, Albuquerque, for appellant.

James A. Maloney, Atty. Gen., Ray Shollenbarger, Richard J. Smith, Asst. Attys. Gen., Santa Fe, for appellee.

## OPINION

OMAN, Judge.

Defendant appeals from his convictions of armed robbery, aggravated assault, and three counts of kidnaping. We affirm.

In his first point relied upon for reversal, defendant attacks the validity of our kidnaping statute [§ 40A–4–1, N.M.S.A. 1953 (Repl. 6)], in the form in which it was enacted. In his second point, he attacks the validity of this kidnaping statute in the form which he contends it must necessarily have taken upon the amendment in 1969 of § 40A–29–2, N.M.S.A. 1953 (Repl. 6) by §§ 40A–29–2.1 and 40A–29–2.2, N.M.S.A. 1953 (Repl. 6, Supp. 1969). These particular sections of our statutes are as follows:

"*40A–4–1. Kidnaping.*—Kidnaping is the unlawful taking, restraining or confining of a person, by force or deception, with intent that the victim be held for ransom, as a hostage, confined against his

will, or to be held to service against the victim's will.

"Whoever commits kidnaping is guilty of a capital felony and shall be sentenced in accordance with section 29-2 [40A-29-2] except that under any of the following circumstances he is guilty of a second degree felony:

"A. When the verdict of the jury so specifies;

"B. When the victim is freed without having had great bodily harm inflicted upon him by his captor; or

"C. When trial is to the court, following waiver of a jury trial or upon entry of a guilty plea or plea of nolo contendere, and in the opinion of the court the imposition of the death penalty is not warranted."

"*40A-29-2.   Sentencing authority— Capital felonies.*—When a defendant has been convicted of a capital felony the judge shall sentence that person to death, unless the jury trying such case shall recommend life imprisonment, then the judge shall sentence that person to life imprisonment; provided that in cases wherein the defendant has entered a plea of guilty to the commission of a capital felony, the court may in lieu of sentencing such person to death, sentence the defendant to life imprisonment."

"*40A-29-2.1.   Capital Punishment limited.*—Punishment by death for any crime is abolished except for the crime of killing a police officer or prison or jail guard while in the performance of his duties and except if the jury recommends the death penalty when the defendant commits a second capital felony after time for due deliberation following commission of a capital felony."

"*40A-29-2.2.   Maximum punishment.*— All crimes for which capital punishment is abolished by section 1 [40A-29-2.1] are punishable by a penalty of life imprisonment in the state penitentiary."

■ In his first point, defendant contends the kidaping statute is invalid, and his convictions thereunder should be reversed, because of the provision in § 40A-4-1(A), supra, permitting the jury to specify that a defendant is guilty only of a second degree felony rather than a capital felony. His position is that he was denied equal protection of the laws and he relies upon United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968); Alford v. State of North Carolina, 405 F.2d 340 (4th Cir. 1968); State v. Chavez, 77 N.M. 79, 419 P.2d 456 (1966); 21 Am.Jur. 2d, Criminal Law § 582 (1965).

In United States v. Jackson, supra, the death penalty provision of the Federal Kidnaping Act was held invalid as imposing an impermissible burden upon the exercise of the constitutional rights "to plead not guilty" and "to demand a jury." In the present case, defendant was not subjected to any chilling effect on his constitutional rights "to plead not guilty" and "to demand a jury." He elected to stand mute, knowing that the court was thereby required to enter a plea of not guilty. Section 41-6-52, N.M.S.A. 1953 (Repl. 6). He was thereafter tried and convicted by the jury only of a second degree felony for kidnaping.

It is not suggested that the Legislature could not properly have made kidnaping either a capital felony or a second degree felony, but only that the statutory provision, of leaving to the jury the decision as to which it should be in a particular case, constituted a denial of equal protection under the law. In the Jackson case the court specifically cited with approval the statutory practice of several states wherein " * * * the choice between life imprisonment and capital punishment is left to a jury in *every* case—regardless of how the defendant's guilt has been determined." Furthermore, nothing stated in the opinion in the Jackson case suggests that a person convicted of the lesser of two offenses, or degrees of the same offense, under a statute such as ours, has been denied equal protection of the law, or has any standing to attack the validity of his conviction by reason of the claimed unconstitutionality of the statute.

Even if we were to concede that our statute in some way could be said to act as a deterrent on the exercise of the rights "to plead not guilty" and "to demand a jury", defendant was not so deterred, and the favorable jury verdict has mooted the question insofar as he is concerned. Holden v. United States, 388 F.2d 240 (1st Cir. 1968), cert. denied, 393 U.S. 864, 89 S.Ct. 146, 21 L.Ed.2d 132 (1968). Compare State v. Hines, 78 N.M. 471, 432 P.2d 827 (1967), and cases therein cited, to the effect that the constitutionality of a legislative act is open to attack only by a person whose rights are affected thereby.

Defendant urges that the decision in Alford v. State of North Carolina, supra, supports his claim of standing to question the validity of our kidnaping statute. We disagree.

The defendant in that case was indicted for murder in the first degree. Under the North Carolina statutes, if he entered a plea of not guilty and was tried and convicted by the jury of first degree murder, the jury, in its discretion, could determine whether the death penalty or life imprisonment should be imposed. He could not avoid a jury trial, except by a plea of guilty. Upon a plea of guilty the punishment could be no greater than life imprisonment.

He pleaded guilty to second degree murder, but the court concluded this plea was made involuntarily. The court had the following to say concerning its reasons for so concluding:

"We think that there is no question but that the incentive supplied to petitioner to plead guilty by the North Carolina statutory scheme was the primary motivating force to effect tender of the plea, especially since throughout the proceedings petitioner has protested his innocence. Further evidentiary hearings are unnecessary. Under *Jackson* therefore, the judgment entered on the plea cannot stand."

As above stated, the defendant in the case now before us was in no way chilled or coerced by the New Mexico statutes into entering a plea of guilty. He in fact entered a plea of not guilty, and was convicted only of the lesser offense by the jury.

Nothing said in State v. Chavez, supra, supports the position of defendant. The question in that case was one of statutory construction, in view of two criminal statutes dealing with marijuana. The statutes were construed as being in pari materia, and the penalty provisions as being irreconcilable. The last enacted penalty provision was held to be the one applicable, since it was the last expression of the Legislature.

It is true the court said in that case it would do violence to the equal protection clauses of our State and Federal Constitutions to " * * * permit the law enforcement authorities to subject one person to the possibility of a greater punishment than another who has committed an identical act. * * * *", but this language must be viewed in the context in which it was used. The court was condemning the situation wherein the state could choose between alternative statutes providing different punishments for the same criminal act. It certainly was not meant to suggest that everyone who commits the same criminal offense must be prosecuted and upon conviction therefor must be given identically the same punishment. Compare State v. Baldonado, 79 N.M. 175, 441 P.2d 215 (Ct.App.1968). See also State v. Lujan, 79 N.M. 525, 445 P.2d 749 (Ct.App.1968); State v. Sharp, 79 N.M. 498, 445 P.2d 101 (Ct.App.1968). Certainly the decision in State v. Chavez, supra, does not in any way suggest that one, so situated ·as is the defendant in the present case, has standing to question the constitutionality of the statute. See in this regard Holden v. United States, supra.

The language of § 582, 21 Am.Jur.2d, Criminal Law, supra, sets forth the general principles relative to the application of the equal protection guarantee of the Fourteenth Amendment to the Federal Constitution, but nothing stated therein suggests

any impropriety in the position we take in this case.

In his second point, defendant urges the invalidity of the kidnaping statute by reason of the enactment of §§ 40A–29–2.1 and 40A–29–2.2, supra. He contends that the kidnaping statute must now be so read that it encourages guilty pleas and falls within the proscription announced in United States v. Jackson, supra. His position is that 40A–4–1(C), supra, must now be read as follows:

"Whoever commits kidnaping is guilty of a capital felony and should be sentenced [to life imprisonment in the state penitentiary] except that under any of the following circumstances he is guilty of a second degree felony:

" * * *.

"C. When trial is to the court, following waiver of a jury trial or upon the entry of a guilty plea or plea of nolo contendere * * *."

We agree with defendant that this is a plausible interpretation of the effect of the passage of §§ 40A–29–2.1 and 40A–29–2.2, supra, on this portion of our kidnaping statute. However, this does not give this defendant standing to complain of the compulsive effect of this statute to plead guilty, even if this be the effect of the said 1969 amendments. Here defendant did not plead guilty or waive the jury, and his conviction by the jury was precisely the same result as would have attained had he pleaded guilty, or had he waived the jury and been found guilty by the court upon trial. The principle announced in Holden v. United States, supra, is directly in point. Defendant is in no position to claim invalidity of the statute, because he has not been adversely affected by the claimed chilling effect upon the assertion of his rights "to plead not guilty" or "to demand a jury trial." See Holden v. United States, supra; State v. Hines, supra.

In any event, if the kidnaping statute is invalid for the reasons asserted by defendant, then the validity of § 40A–29–2.1, supra, is equally questionable for the same

reasons, and the validity of § 40A–29–2.1, supra, is essential to his position. If § 40A–29–2.1, supra, is invalid, then the claimed amendment to § 40A–4–1(C), supra, was not effected.

Defendant's final point is his claim of prejudice by reason of being cross-examined concerning certain acts of misconduct. He cannot raise for the first time on appeal his claim that the questions to which he did not object and which he answered were prejudicial. State v. Reynolds, 79 N.M. 195, 441 P.2d 235 (Ct.App. 1968).

The only question to which he objected was as follows: "Isn't it true that you and Mr. Harvey held up a supermarket in Lubbock, Texas?" Before objection to this question was made by his attorney, defendant answered, "No, sir." The objection was sustained.

Section 20–2–4, N.M.S.A.1953, authorizes the impeachment of the credibility of a witness by general evidence of his bad moral character. It is proper, for the purpose of impeachment under this section of our statutes, to show bad moral character by eliciting from the witness testimony as to specific acts of misconduct. Martinez v. Avila, 76 N.M. 372, 415 P.2d 59 (1966); State v. Torres, 81 N.M. 521, 469 P.2d 166 (Ct.App.1970). This is what the State obviously sought to accomplish by the above quoted question to which the objection was sustained. There is nothing before us to suggest any impropriety on the part of the prosecutor in asking the question.

Defendant asks us to reverse upon the basis of the principles announced in State v. Rowell, 77 N.M. 124, 419 P.2d 966 (1966). However, the decision and the result reached in that case are not applicable here for at least four reasons:

(1) Defendant in that case did not take the stand and was not being cross-examined.

(2) A witness, and not the defendant, was asked about a purported prior felony conviction of the defendant.

(3) Even if the question had been answered by the witness in the negative, the answer could have meant only that the witness had no knowledge of the conviction, and not that the defendant had not been convicted.

(4) The very asking of the question indicated bad faith on the part of the prosecutor, because, as stated by the court, the " * * * question here objected to could have no possible place in the trial. The purpose could have been nothing other than to arouse the prejudices of the jury against appellant. * * *"

It follows from what has been said that the convictions should be affirmed.

It is so ordered.

SPIESS, C. J., and HENDLEY, J., concur.