490 P.2d 466

STATE of New Mexico, Plaintiff-Appellee,

v.

Wayne Arnold MORDECAI, Defendant-Appellant.

No. 650.

Court of Appeals of New Mexico.

Sept. 24, 1971.

Rehearing Denied Oct. 15, 1971.

Joseph (Sib) Abraham, Jr., Bart Cox, Alice L. Dwyer, El Paso, Tex., Robert W. Ward, Lovington, for defendant-appellant.

David L. Norvell, Atty. Gen., Anne K. Bingaman, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

HENDLEY, Judge.

Convicted of unlawfully selling or disposing of marijuana defendant appeals. He asserts five points for reversal which are: (1) change of venue; (2) admission of a three pose mug shot; (3) entrapment; (4) refusal of impeachment testimony and (5) six minute deliberation constitutes jury misconduct.

Point one regarding change of venue was disposed of by State v. Mosier and Mordecai (Ct.App.), 83 N.M. 213, 490 P.2d 471, decided September 17, 1971, which had been consolidated with the trial in this case for the purpose of the motion for the change of venue. Point five was resolved contrary to defendant's position by State v. Mosier and Mordecai, supra.

We affirm.

## ADMISSION OF A THREE POSE MUG SHOT.

Defendant contends that the three pose mug shot should not have been admitted into evidence because the photograph was immaterial, there was no proper predicate, it was of such an inflammatory nature as to be prejudicial, and the photographing of the defendant was a violation of his rights under the Fifth and Fourteenth Amendments of the United States Constitution. We discuss each contention in turn.

*Immateriality.*

Relying on United States v. Silvers, 374 F.2d 828 (7th Cir. 1967) defendant contends that absent a showing of special circumstances or some special need based upon facts it was error to admit photographs which on their face disclose past incarcerations. Defendant further contends that absent any showing of a clear probative purpose mug shots taken from police files are not material to the issues being tried in a criminal case.

We disagree. Evidence of the appearance of both the undercover agent and the defendant was developed during question-

ing, and without objection. This evidence went to the ability of the undercover agent to "identify" with people suspected of dealing in narcotics. The questioned photograph, taken after defendant's arrest, shows defendant's appearance. The photograph illustrated the "appearance" testimony and was material to that issue. See State v. Webb, 81 N.M. 508, 469 P.2d 153 (Ct.App.1970). Further, the citations on which defendant relies are distinguishable because they go to the question of a photograph of a defendant showing a past criminal record. The evidence as to the photograph in this case is that it was taken after defendant's arrest on the charge for which he was being tried.

### Absence of a proper predicate.

■■■ In asserting an absence of a proper "predicate", defendant argues there was a "total absence of any legitimate issue which might be resolved or illustrated by * * *" introduction of the photograph. We disagree.

The defendant made a "motion in limine" to suppress admission of the three pose photograph of defendant taken the day after his arrest because his appearance would inflame the minds of the jurors. During the argument on this motion the State explained that the only purpose for which the photographs would be introduced would be to rebut any testimony elicited by defense counsel regarding the undercover agent's hairstyle and general appearance. Thereafter, defendant sought to assert the defense of entrapment, using the undercover agent's dress and appearance to allude to the fact that he gave the appearance of a person who deals in drugs. The State then rebutted on redirect by showing that defendant had long hair and whiskers and was dressed very informally. The State then introduced the three pose mug shots for corroboration. Since the testimony went in without objection, the picture could only convey information already admitted before the jury. State v. Leach, 58 N.M. 746, 276 P.2d 514 (1954).

### Inflammatory nature of photographs.

Defendant maintains that Lea County was conservative, that beards and long hair were not common and so when the defendant was depicted in that fashion he would come up against the prejudice in the community reserved for persons who " * * * by their dress, hair length and life styles, display publicly their lack of appreciation of the more traditional way of life so dear to the hearts of the Lea County citizenry."

Defendant states that because of the county's conservatism, he was dressed conservatively at trial, and, thus, the photograph showing his earlier style of hair and mode of dress inflamed the jury against him.

It is well settled that the trial courts are given broad discretion when deciding evidentiary questions. State v. Webb, supra. We fail to see how the trial court abused its discretion when defendant's appearance in relation to the undercover agent was a material issue and when the defendant did not object to the testimony regarding the appearance of the defendant. Once this testimony was introduced, without objection, the introduction of photographs merely corroborated testimony already received. This was not reversible error. State v. Leach, supra. The fact that the photograph might have had some inflammatory effect did not render it inadmissible because it was material to the issues in the case. Compare State v. Everitt, 80 N.M. 41, 450 P.2d 927 (Ct.App.1969); State v. Gray, 79 N.M. 424, 444 P.2d 609 (Ct.App. 1968).

### Fifth Amendment Violation.

■■■ Defendant contends that the Fifth Amendment of the United States Constitution prohibition against self-incrimination was violated by photographing him when he was in custody. Defendant concedes that evidence of fingerprints, blood type, hair samples have been held not to come within this prohibition; nevertheless, he maintains there is a distinction in this situation in that he could have done

something to improve his appearance in the photographs. We fail to see the significance of that distinction. The privilege against self-incrimination is limited to disclosures that are "communicative" or "testimonial" in nature and does not include identifying physical characteristics. Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); State v. Williamson, 78 N.M. 751, 438 P.2d 161 (1968); State v. Ramirez, 78 N.M. 584, 434 P.2d 703 (Ct.App.1967).

## ENTRAPMENT.

■ Defendant contends that he was entrapped as a matter of law. Defendant does not disagree with the proposition that one is not entitled to the defense of entrapment when he was merely given an opportunity to commit an offense he was already willing to commit. State v. Martinez (Ct.App.), 83 N.M. 13, 487 P.2d 923, decided July 16, 1971; State v. Sanchez, 79 N.M. 701, 448 P.2d 807 (Ct.App.1968).

It is defendant's position that he might have been ready and willing to sell marijuana in El Paso, Texas but that he was " * * * entrapped into committing the offense of sale of narcotics in the State of New Mexico. * * *" Defendant relies on Carbajal-Portillo v. United States, 396 F.2d 944 (9th Cir. 1968). Even if we assume that New Mexico has the identical rule, *Carbajal* does not aid defendant. In *Carbajal* defendant was willing to transport narcotics for sale within the country of Mexico but was reluctant to do so in the United States. The opinion in *Carbajal* notes that the Assistant United States Attorney " * * * with commendable candor acknowledged that Carbajal would not have brought the narcotics into the United States but for the importuning of Ricos, the narcotics agent." In this case, the evidence raised a factual question whether defendant was willing to commit the offense in New Mexico. This factual question, as to entrapment, was submitted to and resolved by the jury.

## IMPEACHMENT TESTIMONY.

■ Defendant contends that the trial court erred in refusing to permit testimony to impeach earlier testimony of the State's undercover agent. The testimony sought to be impeached was that given on cross-examination of the agent by the defendant, and concerned aspects of the agent's personal life and activities which were unrelated to any activity of the agent in this case.

Section 20-2-4, N.M.S.A.1953 (Repl. Vol. 1970) permits impeachment of the credibility of a witness by general evidence of his bad moral character. Under that section it is proper to use specific acts of misconduct to show bad moral character. State v. Sharpe, 81 N.M. 637, 471 P.2d 671 (Ct.App.1970). However, the answer of the witness is conclusive of the matter under inquiry. Martinez v. Avila, 76 N.M. 372, 415 P.2d 59 (1966); See State v. McFerran, 80 N.M. 622, 459 P.2d 148 (Ct. App.1969).

Defendant relying on Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed. 2d 848 (1958), maintains that once " * * * defendant raised the defense of entrapment he automatically placed his own past behavior at issue (in order for the State to show pre-existing disposition to commit the offense). * * *" Defendant maintains that once this happens the undercover agent's prior behavior would likewise become relevant. We do not so read *Sherman*. In *Sherman* the inquiry into prior activities of the agent was limited to those which led up to the entrapment.

Affirmed.

It is so ordered.

WOOD, C. J., and SUTIN, J., concur.