853 P.2d 160

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Miguel Angel GALLEGOS,
Defendant–Appellant.**

**No. 13,497.**

Court of Appeals of New Mexico.

March 29, 1993.

Tom Udall, Atty. Gen., Joel Jacobsen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Leonard J. Foster, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## *OPINION*

ALARID, Judge.

Miguel Angel Gallegos (Defendant) seeks reversal of a jury conviction for armed robbery with firearm enhancement, claiming:

1. The trial court erred in not allowing Defendant's brother to display his tattoos;

2. The trial court erred in denying Defendant's requested jury instruction on eyewitness testimony; and,

3. The identification procedures were impermissibly suggestive.

On the first issue, we find that the trial court erred in refusing to admit the tattoo display as demonstrative evidence. However, the refusal does not constitute plain error, so reversal is not warranted. On the second issue, we find no error in the trial court's rejection of the tendered instruction. The third issue is without merit, and we summarily dismiss that claim. The judgment is affirmed.

## FACTS

Defendant was convicted of the armed robbery of an Albuquerque convenience store and sentenced to ten years in prison, with four years suspended. The only evidence identifying Defendant as the robber was the testimony of the store clerk, who said the robber was wearing a nylon stocking mask, green "army" jacket, and a sock over his left hand. Despite the attempted disguise, the clerk said she immediately recognized Defendant, a regular customer, as the robber because the stocking had holes cut out for his eyes, nose, and mouth. In identifying Defendant as the robber, the store clerk told police Defendant had a tattoo on his left hand and tattoos on his arms, even though the tattoos were not visible during the robbery.

At trial, Defendant attempted to show that the clerk had confused him with his brother, Martin Gallegos (the brother), who frequently accompanied Defendant to the store. To illustrate his point, Defendant sought to have his brother display his tattoos for the jury. In a pretrial hearing, the trial court concluded that the brother's display of his tattoos would be testimonial evidence, subjecting him to cross-examination. Because the brother intended to assert his Fifth Amendment privilege against self-incrimination, the court barred him from exhibiting his tattoos. The court did allow Defendant and his brother to stand next to each other so jurors could compare their physical characteristics.

## DISCUSSION

### I. Tattoo Display

■ Physical characteristics that tend to identify a person are nontestimonial evidence. *State v. Mordecai*, 83 N.M. 208, 210–11, 490 P.2d 466, 468–69 (Ct.App.1971). Compelling an individual to display identifying characteristics does not implicate the Fifth Amendment because the constitutional protection against self-incrimination "is limited to disclosures that are 'communicative' or 'testimonial' in nature and does not include identifying physical characteristics." *Id.* at 211, 490 P.2d at 469. Therefore, an individual may be compelled to provide a handwriting sample, *State v. Archuleta*, 82 N.M. 378, 382–83, 482 P.2d 242, 246–47 (Ct.App.1970), *cert. denied*, 82 N.M. 377, 482 P.2d 241 (1971); pose for photographs, *Mordecai*, 83 N.M. at 211, 490 P.2d at 469; or wear a mask, walk, and speak for identification purposes, *State v. Ramirez*, 78 N.M. 584, 434 P.2d 703 (Ct.App. 1967).

■ No New Mexico appellate court has addressed the issue of admissibility of tattoos as demonstrative evidence. Courts in other jurisdictions, however, have concluded that a tattoo display used to identify an individual or rebut a witness's identification is admissible as demonstrative evidence. *United States v. Bay*, 762 F.2d 1314, 1315–16 (9th Cir.1984) (reversing trial court's refusal to permit defendant to display tattooed hands); *State v. Martin*, 519 So.2d 87 (La.1988) (trial court erred in refusing to let defendant display tattoo without being subjected to cross-examination). We agree.

■ Although the trial court erred in ruling that the tattoos were testimonial and therefore inadmissible, we hold that error to be harmless and we reject the State's argument that the issue was not preserved. Defendant's attempt to offer the evidence was sufficient to preserve the issue for appellate review.

The store clerk testified that she recognized the robber because of his facial characteristics. She recalled that Defendant had a rosary tattooed on his left hand, as did his brother. She could not recall or describe the tattoos Defendant had on his arms, except to say she believed Defendant only had tattoos on his upper arms. Defendant testified that his brother had more tattoos than he did; specifically, that Defendant had only one tattoo on his upper left arm, while his brother had tattoos covering both arms. Allowing the jurors to observe the brother's tattoos would have added nothing to the jurors' comparison of the two because Defendant neither described nor displayed his own tattoos.

Although there were some other minor discrepancies between the clerk's identification of Defendant and Defendant's testimony, the discrepancies do not raise grave doubts about the clerk's identification. At the time of the robbery, the clerk was not identifying a stranger. She had waited on both brothers numerous times in previous months and said she could easily distinguish between the two. The jury also had the opportunity to view the two brothers while they stood side-by-side to determine if their physical similarity was likely to confuse the store clerk. Given these facts, the trial court's error in not permitting the tattoo display does not give rise to the level of prejudice that would warrant reversal.

## II. Jury Instruction

■ Defendant also claims that the trial court erred in refusing to instruct the jury on the infirmities in eyewitness testimony. The trial court rejected Defendant's tendered instruction that would have focused the jury's attention on factors that tend to question the reliability of an eyewitness's identification. The instruction was pat-terned after the model jury instruction in *United States v. Telfaire*, 469 F.2d 552, 558–59 (D.C.Cir.1972). The trial court did give the uniform jury instructions on witness credibility and reasonable doubt, SCRA 1986, 14–5020 and –5060.

New Mexico appellate courts have held that the uniform jury instructions on witness credibility and reasonable doubt cover a defendant's theory of misidentification by an eyewitness. *State v. Ortega*, 112 N.M. 554, 575, 817 P.2d 1196, 1217 (1991); *State v. Mazurek*, 88 N.M. 56, 58, 537 P.2d 51, 53 (Ct.App.1975). Because the trial court gave the witness credibility and reasonable doubt instructions approved by our Supreme Court, we hold that the rejection of the specific instruction was not reversible error.

## III. Identification Procedures

Defendant's final argument is based on two claims: that the clerk's initial identification of Defendant was improperly bolstered and that the procedures the police used in the photograph array were impermissibly suggestive. Defendant did not object to testimony about either issue at trial. In the absence of timely objection, we will examine such claims under the fundamental error doctrine. *State v. Hennessey*, 114 N.M. 283, 287, 837 P.2d 1366, 1370 (Ct. App.), *cert. denied*, 114 N.M. 82, 835 P.2d 80 (1992). However, we need not reach the fundamental error analysis in this case because neither Defendant's brief nor the trial transcripts provide any support for either claim.

The judgment is affirmed.

**IT IS SO ORDERED.**

MINZNER, C.J., and APODACA, J., concur.