# IN THE COURT OF APPEALS OF IOWA

No. 3-1137 / 12-1908
Filed March 12, 2014
Amended July 16, 2014

STATE OF IOWA,
        Plaintiff-Appellee,

vs.

JASSIMEN N. DOBBINS,
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Richard G. Blane II,

Judge.


        Jassimen Dobbins appeals from her conviction following a jury trial for

delivery of a controlled substance and failure to possess a tax stamp.

**AFFIRMED.**


        Mark C. Smith, State Appellate Defender, Patricia Reynolds, Assistant

Appellate Defender, and John D. Twillmann, Student Legal Intern, for appellant.

        Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney

General, Sean Corpstein, Student Legal Intern, John P. Sarcone, County

Attorney, Stephan K. Bayens, Assistant County Attorney, for appellee.



        Heard by Potterfield, P.J., and Doyle and Bower, JJ.

**DOYLE, J.**

### I. Background Facts and Proceedings.

In November 2011, the State filed a trial information charging Jassimen Dobbins with delivery of a class "C" controlled substance, MDMA, also known as ecstasy, in violation of Iowa Code section 124.401(1)(c)(8) (Supp. 2011). She was also charged with failure to possess a tax stamp, in violation of sections 453B.3 and .12 (2011). The minutes of testimony state that on June 14, 2011, a Des Moines police officer utilized a confidential informant (CI) to make a controlled purchase of purported MDMA from Dobbins.

According to the minutes, the CI went to the "mutually agreed upon location" to make the purchase from Dobbins, while officers surveilled the location. A surveilling officer observed a female adult matching Dobbins's description waiting in the area of the agreed-upon location, and the officer observed the woman enter the front passenger seat of the CI's vehicle when it arrived. The CI and the woman had a short interaction, and then the woman exited the vehicle.

Officers met with the CI immediately thereafter, and the CI gave the officers a plastic bag containing eleven multicolored tablets identified as MDMA by the CI. The CI told the officers he observed Dobbins waiting for him to arrive at the previously agreed-upon location, and she then got into his vehicle. The CI stated he had a short conversation with Dobbins, and she then retrieved a plastic bag containing purported MDMA and sold it to him for an agreed-upon price. The CI stated Dobbins then got out of the vehicle and left the area. The CI was subsequently shown a photograph of Dobbins, and he positively identified

Dobbins as the individual from whom he purchased the MDMA. The minutes do not detail whether the CI observed, or told the officers he observed, any specific features of Dobbins's appearance, such as hair color or tattoos.

Later, the substance purchased by the CI was tested and determined to be 1-benzylpiperazine (BZP), not MDMA. The State subsequently amended the trial information substituting BZP for MDMA to conform to the evidence.[1]

Dobbins was arrested in October 2011 and jailed in the Polk County Jail. While in jail, she made a phone call to a friend. Their phone conversation was recorded. During the call, she explained that someone she knew gave the CI her number to purchase pills and "set her up." She admitted in the call she made the transaction, but she claimed it was not her "stuff"; rather, she was asked to take it outside and serve the CI.

In April 2012, the State filed notices of additional witnesses. The State advised that an officer would testify concerning the content of Dobbins's recorded phone call, and that the CI would testify as to all observations he made of Dobbins and to the content of any conversation he had with Dobbins in the controlled transaction.

The CI was deposed by Dobbins at some point prior to trial. Thereafter, Dobbins requested the State to provide the CI's address. Dobbins also filed a subpoena duces tecum requesting the Des Moines Police Department provide "[a]ny and all documents, reports, photographs, video, notes and any other relevant documents relating to the investigation and/or arrest of [Dobbins]." In

---

[1] Because BZP is also a class "C" controlled substance, the offense and the manner of committing the offense remained the same.

response, the State filed motions for a protective order and to quash the subpoena.

A hearing on the State's motions was held. There, Dobbins explained she needed the CI's address to subpoena evidence that was "directly relevant to [Dobbins's] defense." Specifically, she wanted to obtain "phone numbers of phones [the CI] was utilizing during the time in question for this offense" to acquire phone records. There was no further discussion as to how those numbers were relevant to Dobbins's charges. The State resisted providing Dobbins with the CI's address in order to insulate the CI from potential threats and intimidation. Additionally, the State noted it had already provided the CI to Dobbins for a deposition.

Following the hearing, the district court entered an order granting the State's motion for a protective order and quashing Dobbins's subpoena duces tecum. The court found Dobbins did not establish that the CI's address was necessary "for investigative purposes or to ensure service of a subpoena," and it concluded disclosure of the address, without any useful purpose, would put the CI at substantial risk, citing Iowa Rule of Criminal Procedure 2.11(12)(c).

A jury trial commenced in July 2012. The CI testified on behalf of the State. He testified he learned from a friend of Dobbins's that he could buy some MDMA from her, and he got her phone number from the friend. He testified he then called Dobbins to set up the buy, and she told him to come over. He described the buy. During cross-examination, the CI was questioned about a tattoo he described at his deposition. The CI admitted he said the person from

whom he purchased the drugs had a tattoo of "this bitch" or "his bitch" on her thigh.

Polk County Jail Sergeant Steve Courtney testified as to the procedures for recording the calls of inmates, as well as the booking process when a person is arrested. On cross-examination by Dobbins, Courtney was asked if the tattoos of arrestees are recorded in any way by the jail. The State objected to the question being outside the scope of its direct examination, and the court sustained the objection.

The court and counsel then met outside the presence of the jury to make a record. Dobbins counsel explained:

> The purpose of the witness Sergeant Steve Courtney is because he can lay the proper foundation for the booking records at the jail that show [Dobbins] doesn't have a tattoo as stated by the [CI].
> The alternative . . . is that Ms. Dobbins can stand up, and we can show the jury her upper thigh to show there's no tattoo. And then I can photograph and submit those photographs into evidence.

The court was advised Dobbins was not planning on testifying at trial. The following exchange then occurred:

> [THE COURT]: Then how do you intend to have her expose herself? Isn't that a form of testimony?
> [DOBBINS'S COUNSEL]: That was my concern, Your Honor, that somehow the State would view it testimonial in nature and that that would open the door.
> So then that's when I pursued the alternative option of getting the booking records from the Polk County Jail because that will basically satisfy the same.
> [THE COURT]: Didn't you take depositions in this case?
> [DOBBINS'S COUNSEL]: We did, Your Honor. I did not depose Steven Courtney.
> . . . .
> [THE COURT]: You're saying that this witness just became known?

[DOBBINS'S COUNSEL]: Well, yes, Your Honor. I mean, I did over the break learn that the booking photos would—they would take photos of [Dobbins's] tattoos.

[THE COURT]: Did you ask [the CI] in his deposition about that tattoo?

[DOBBINS'S COUNSEL]: That was where I learned about the tattoo, Your Honor.

[THE COURT]: So you've known since May 22nd of 2012 about the tattoo?

[DOBBINS'S COUNSEL]: Yes.

[THE COURT]: [W]hen did you first learn that the jail may have information?

[DOBBINS'S COUNSEL]: Over the lunch hour, Your Honor.

[THE COURT]: Why did you learn it over the lunch hour?

[DOBBINS'S COUNSEL]: Because some other attorneys that were in here provided that as an alternative for me; indicated that there could be some—that it could be testimonial in nature if Ms. Dobbins were to stand up and expose her legs to the jury.

And, obviously, I don't want to open the door to cross-examination by [the prosecutor] if my client does not intend to testify. So then they said, Hey, the jail would have booking photos, you should try to obtain them. So that is what I did, Your Honor.

. . . .

[DOBBINS'S COUNSEL]: I guess I would like some clarification, then, Your Honor. After speaking with [the prosecutor], he indicates that Ms. Dobbins standing up and exposing her tattoo he wouldn't view testimonial in nature.

. . . .

Your Honor, I don't have any objection to not doing it through Mr. Courtney. I just want some clarification that that's not going to open up the door to cross-examine my client.

I don't believe it would because I don't believe it's testimonial in nature. But I just want to be absolutely clear because I do not want to open the door.

[THE COURT]: When was this telephone—

[THE PROSECUTOR]: Jail call.

[THE COURT]: —call disclosed?

[THE PROSECUTOR]: It was disclosed in, I would say, December of 2011 or January of 2012.

[THE COURT]: You're saying there's an identification issue when [Dobbins]—I've listened to this CD, and she's on the phone talking about how she got set up and she went out and she's the one that did this.

I'm having a little trouble understanding your theory of defense when [Dobbins is] admitting in recorded evidence that she did it and your defense is that she's not the one. And then I could

see where you could say that there's an identification issue at the deposition, but the State has her own admission.

[DOBBINS'S COUNSEL]: Your Honor, and I can't go back and recall what first alerted me that there might be a question with the identification, but it was just before the deposition.

And I guess I don't recall what made me think about that particular issue, but it was something that prompted something I read from one of the officers or heard or something. I don't recall, Your Honor.

But I did believe that the eyewitness identification might not be accurate

. . . .

[THE COURT]: At this point we're in the State's case. My ruling that it was beyond the scope of the State's direct examination as to this witness stands. I believe it's totally different. You want to use this witness to present defense testimony.

At this point that ruling's going to stand. We're going to proceed with the State's case in chief.

The phone recording was later played for the jury. The jury ultimately found Dobbins guilty as charged. She now appeals.

## II. Scope and Standards of Review.

"We review evidentiary rulings for abuse of discretion." *State v. Huston*, 825 N.W.2d 531, 537 (Iowa 2013). We will reverse the decision of the district court only where it impacts the substantial rights of the complaining party. Iowa R. Evid. 5.103(a); *McClure v. Walgreen Co.*, 613 N.W.2d 225, 235 (Iowa 2000). But when the evidentiary claim involves constitutional rights, such as ineffective assistance of counsel, we review de novo. *Osborn v. State*, 573 N.W.2d 917, 920 (Iowa 1998). We review sufficiency of the evidence claims for correction of errors at law. *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011). Discovery demands are reviewed for abuse of discretion. *State v. Groscost*, 355 N.W.2d 32, 33 (Iowa 1984).

*III. Discussion.*

On appeal, Dobbins contends the district court erred (1) in concluding the displaying of her tattoo was testimonial in nature; (2) in excluding the Polk County Jail officer from testifying as a defense witness, and (3) in not disclosing to her the CI's address for subpoena purposes. Additionally, she argues her trial attorney was ineffective in failing to raise a sufficiency-of-the-evidence claim concerning the tax stamp violation, and she raises other claims pro se. We address her arguments in turn.

*A. Evidentiary Issues.*

*1. Tattoo Display.*

Dobbins advances several theories concerning her claim the district court erred in concluding the display of her tattoo was testimonial in nature. By framing the issue as a violation of her Fifth Amendment right against self-incrimination, she sidesteps the threshold questions of foundation and relevance. She failed to offer a witness (not necessarily herself) to testify that she did not have the tattoo as described by the CI on the date of the crime, nor did she deal with the problems inherent in her proposed testimony from Officer Courtney, who booked her into jail some four months after the date of the crime. Her argument that foundation was laid by the CI when he testified she did have the tattoo on the date of the crime is unconvincing.

As to the issue whether displaying her legs to the jury would have opened the door to her cross-examination in violation of her Fifth Amendment rights, she cites numerous cases from around the country that have concluded otherwise. *See*, *e.g.*, *United States v. Bay*, 762 F.2d 1314, 1315 (9th Cir. 1984) ("If [the

display of a defendant's tattoo] can be compelled by the government when it is to the government's advantage, surely the defendant can make the same showing without taking the stand, when such a showing is to his advantage."); *Whittington v. State*, 656 So.2d 1346, 1347 (Fla. Dist. Ct. App. 1995) (holding trial court erred in ruling the defendant would be subject to cross-examination if he displayed his tattoos); *Kulick v. State*, 614 So.2d 672, 673 (Fla. Dist. Ct. App. 1993) ("[T]rial court erred because [a display of tattoos or scars is] nontestimonial . . . [and] does not subject the defendant to cross examination."); *Pettit v. State*, 612 So.2d 1381, 1382-83 (Fla. Dist. Ct. App. 1992) ("A display of the defendant's forearms would have been nontestimonial in nature and would not subject the defendant to cross examination."); *State v. Martin*, 519 So.2d 87, 91 (La. 1988) ("[T]rial judge erred in holding that defendant would be subject to 'limited' cross-examination if he chose to display his tattoos to the jury. Such a display would not have constituted testimony by the defendant."); *Com. v. Poggi*, 761 N.E.2d 983, 985 (Mass. App. Ct. 2002) ("[W]e do not characterize the defendant's proposed display of the tattoos on his forearms as testimonial. No speaking or writing was contemplated. The demonstration seems to us to be more akin to a display of the defendant for the purpose of revealing or examining some physical characteristic, such as height, weight, or other physical feature. This is permitted routinely and is not viewed as testimonial or requiring an opportunity to cross-examine."); *State v. Gallegos*, 853 P.2d 160, 161 (N.M. Ct. App. 1993) (agreeing with "[c]ourts in other jurisdictions . . . [concluding] that a tattoo display used to identify an individual or rebut a witness's identification is admissible as demonstrative evidence."). Although this issue has not yet been addressed in

any Iowa appellate opinion and is well-briefed by the parties here, it must wait for another day to be decided.

Our courts have long followed the rule that "[e]rror . . . predicated upon a ruling which admits or excludes evidence will not provide a defendant with a basis for relief on appeal, unless a substantial right of the [defendant has been] affected." *See State v. Parker*, 747 N.W.2d 196, 209 (Iowa 2008) (internal quotations omitted); *see also* Iowa R. Evid. 5.103(a). Although "[w]e presume the defendant's rights have been prejudiced," the State can affirmatively rebut the presumption by establishing that there was overwhelming evidence of the defendant's guilt. *State v. Howard*, 825 N.W.2d 32, 42 (Iowa 2012).

The State asserts that, even if the district court erroneously found display of Dobbins's tattoo was testimonial in nature, the error is harmless because there is overwhelming evidence of her guilt. We agree.

To establish Dobbins's guilt of the delivery of a class "C" controlled substance, the State had to prove, beyond a reasonable doubt:

> 1. On or about June 14, 2011, [Dobbins] or someone she aided and abetted delivered a controlled substance.
> 2. [Dobbins] knew the substance was a controlled substance.

*See* Iowa Code § 124.401(1)(c)(8). To establish guilt on the violation-of-tax-stamp charge, the State had to prove, beyond a reasonable doubt:

> 1. On or about June 14, 2011, [Dobbins] or someone she aided and abetted knowingly possessed ten or more dosage units of a controlled substance.
> 2. [Dobbins] knew that the substance possessed was a controlled substance.
> 3. [Dobbins] possessed the substance and failed to affix a State of Iowa tax stamp, label or other official indicia to the controlled substance.

*See id.* §§ 453B.3, .12.

Here, the recording of the jail phone call made by Dobbins overwhelmingly evidences her guilt. She admitted on the phone call she delivered pills to an informant. The pills were found to be BZP, a class "C" controlled substance. There was no tax stamp affixed. Any evidence concerning her tattoos—whether it matched the CI's deposition testimony or not—would not overcome her own admissions. Consequently, even assuming without deciding the district court erred or abused its discretion in concluding the display of her tattoo was testimonial in nature, the error is harmless in light of her own admissions. Consequently, we affirm on this issue.

### 2. Exclusion of Testimony of Polk County Jail Officer.

Dobbins also argues the district court erred in excluding the testimony of Sergeant Courtney concerning whether or not the Polk County Jail had documented Dobbins's tattoos at the time she was booked at the jail. Again, even assuming, arguendo, the court erred or abused its discretion in excluding the officer's testimony, any evidence of her tattoo would not overcome her own admissions. The error is harmless, and we affirm on this issue.

### 3. CI's Address.

Dobbins contends the court abused its discretion in denying her disclosure of the CI's address. She argues:

> [Dobbins's counsel] was unable to acquire the necessary phone records without [the CI's] address. Without the phone records she was unable to confirm or deny that [the CI] contacted Dobbins via telephone, which limited her ability to impeach [the CI's] testimony. Dobbins's rights were injuriously affected when the court erroneously denied access to information that was vital and crucial to Dobbins's defense.

Here, we must again conclude that if the court erred in denying her request, the denial of disclosure of the address was harmless. Even assuming she was able to impeach the CI's testimony as to whether he called her to set up the buy, she admitted she sold the pills to the informant. There is no reasonable probability that, had she actually impeached the CI, she could have overcome her own admission. If there was any error, it was harmless. We therefore affirm on this issue.

### B. *Ineffective Assistance of Counsel.*

Finally, Dobbins contends her trial counsel was ineffective for failing to assert a sufficiency-of-the-evidence claim as to her tax-stamp violation in her motion for acquittal. Generally, we do not resolve claims of ineffective assistance of counsel on direct appeal. *State v. Biddle*, 652 N.W.2d 191, 203 (Iowa 2002). We prefer to leave such claims for postconviction relief proceedings. *State v. Lopez*, 633 N.W.2d 774, 784 (Iowa 2001). But when the record is adequate, as it is here, we will resolve them. *See State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978); *see also State v. Dudley*, 766 N.W.2d 606, 620 (Iowa 2009).

To prevail on her claims of ineffective assistance of counsel, Dobbins must show (1) counsel failed to perform an essential duty and (2) prejudice resulted. *See State v. Lane*, 726 N.W.2d 371, 393 (Iowa 2007). Improvident trial strategy, miscalculated tactics, or mistakes in judgment do not necessarily amount to ineffective assistance of counsel. *Osborn v. State*, 573 N.W.2d 917, 922 (Iowa 1998). Furthermore, counsel has no duty to raise a meritless objection. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). We evaluate the totality of the relevant circumstances. *Lane*, 726 N.W.2d at 392.

Dobbins acknowledges that the State is not required to test the purported drug to convict a person of a drug offense and a fact finder can rely on circumstantial evidence to determine that a substance is an illegal drug. *See Brubaker*, 805 N.W.2d at 172. She admits the State tested three of the eleven pills, and all three were confirmed to be BZP. However, she maintains the State's failure to test and confirm that all eleven pills were BZP left the jury "to speculate on the identity of the pills and [rely] on conjecture to reach guilty plea." She therefore argues her attorney was ineffective in failing to challenge the sufficiency of the evidence on the issue. We disagree.

Here, an officer testified that MDMA is often sold in pill or tablet form in multiple colors. The officer further testified that BZP is regularly sold as MDMA because it is molecularly similar to MDMA and gives off similar side effects when ingested. He also testified as to the lab report identifying the three tested tablets to be BZP. The lab report notes the bag contained eleven round tablets in the colors of green, blue, and purple, and it states that one of each colored tablet was analyzed and determined to be BZP. Additionally, it reports that the tablets not tested were each "consistent in appearance" with the tested tablet of the same color.

Based on this direct evidence, the jury could have concluded that the untested tablets would have been consistent with the three tablets that were tested—and therefore would have produced consistent test results for BZP in ten dosage units, as required under Iowa Code section 435B.1(3)(d). We therefore conclude that based on the direct evidence presented by the State, the jury could have concluded that at least ten of the eleven pills were BZP. Consequently,

Dobbins's trial counsel had no duty to assert this claim.  Dobbins has therefore failed to establish her trial counsel was ineffective.  We affirm as to this issue.

### IV. Conclusion.

We have carefully considered all of the claims raised by counsel and by Dobbins pro se.  Those not addressed specifically in this decision are either disposed of by our resolution of other claims or are without merit.  Accordingly, we affirm Dobbins's convictions and sentences.

**AFFIRMED.**