599 P.2d 385

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Michael A. GUTIERREZ,
Defendant-Appellant.**

No. 2693.

Court of Appeals of New Mexico.

Feb. 1, 1979.

John B. Bigelow, Chief Public Defender, Reginald J. Storment, App. Defender, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Santa Fe, Charlotte Hetherington Roosen, Asst. Atty. Gen., Albuquerque, for plaintiff-appellee.

## OPINION

WALTERS, Judge.

The defendant appeals his jury conviction of robbery with a deadly weapon, and con-

tends that the mandatory enhancement of the sentence by the trial court upon the jury's specific finding of defendant's use of a firearm is violative of the constitutional double jeopardy prohibition.

Aside from the constitutional argument, which we find to be without merit since it raises the identical question answered adversely to defendant in *State v. Gabaldon,* 92 N.M. 230, 585 P.2d 1352 (Ct.App.1978), defendant urges (1) that he was denied effective assistance of counsel, and (2) that "mugshot" books and a police photo of himself were improperly admitted into evidence.

It should be noted that defendant was represented by private counsel at trial and by the Public Defender's Office upon appeal.

The basis of defendant's complaint of ineffective counsel rests on his attorney's failure to voir dire the potential jurors, failure to challenge for cause a seated juror when the court was advised by a listed prosecution witness that he recognized the juror as a former fellow worker, and failure to object to continued testimony of and references by the police officer witnesses to "mug shots" and the "mugshot" books. Insofar as the last claimed "failure" of the trial counsel is concerned, there is an inevitable overlap into defendant's second contention respecting erroneous admission of the police mugshot records and photo of defendant.

■ Defense counsel's decision to examine or not to examine jurors on voir dire is a matter of strategy. He is not forced to do so, and he may have been satisfied, after examination by the court and the State's attorney, that the mental attitudes, probable bias, competency or incompetency of each juror had been sufficiently probed to assure a fair and impartial jury. We cannot say that failure of defendant's counsel to conduct voir dire during selection of the jury is indicative of incompetence. *State v. Trejo,* 83 N.M. 511, 494 P.2d 173 (Ct.App. 1972); *State v. Selgado,* 78 N.M. 165, 429 P.2d 363 (1967).

■ The trial court questioned the impaneled juror acquainted with one of the prosecution witnesses after learning of the former work relationship between them and was satisfied that it would not affect his ability to serve fairly and conscientiously. Trial counsel for defendant was not required to challenge the juror for cause or peremptorily; indeed, the bias necessary to sustain a challenge for cause was dispelled by the juror's responses to the court's questioning, and the prejudicial circumstances of *Mares v. State,* 83 N.M. 225, 490 P.2d 667 (1971), were not present in this case.

Trial counsel failed to object to repeated testimony from two police officers concerning the victim's identification of defendant after he had viewed police "mugshot" albums, and to the prosecutor's continual references to "mugshots" and "mug books." Nor did he object when another prosecution witness testified that he showed the victim a photo array of five persons whom he identified to the jury as "individuals on parole supervision in the State of New Mexico and he identified Mr. Gutierrez from those photographs."

Justice McManus observed in *State v. Trivitt,* 89 N.M. 162, 168, 548 P.2d 442, 448 (1976) that:

It is relatively easy for different counsel on an appealed case to differ on trial tactics used during the trial of a cause. Hindsight is not always better than foresight in the course of litigation from beginning to end.

Who is to say that defendant's counsel did not deliberately weigh the risk of adding emphasis to these slightly-veiled references to defendant's past criminal character by objections, against the hope of minimizing the attention the jury might focus on the significance of such comments?

Defendant was identified in court by the gas station attendant, the State's first witness, as the robber who held a shotgun on him during the robbery. Subsequently, the sheriff's officers were called by the prosecutor. It was during their testimony that the frequent references to "mugshots" and police photos of defendant were made, and

State's Exhibits 2 and 3, the "mugshot" albums of the Bernalillo County Sheriff's Department, and 3(a), the photo of defendant taken from one of those albums, were introduced, admitted, and passed to the jury over counsel's objections to the relevancy of the exhibits.

The date of each person's arrest was shown on the face of all of the pictures in the albums. The offense here charged occurred on January 16, 1976; defendant's photograph shown to the jury carried the date of his arrest previously on February 14, 1974. At this stage of the trial, defendant had not testified and he did not later take the stand, although five alibi witnesses were called during presentation of his defense.

■ Generally, evidence of a defendant's prior criminal record, and thus his character, is not permitted to prove conduct or that he acted in conformity with such character, unless presented to rebut character evidence offered by the accused. N.M.R. Evid. 404(b) N.M.S.A.1978 [formerly § 20–4–404(b), N.M.S.A.1953 (Repl. Vol. 4, Supp. 1975)]; State v. Ross, 88 N.M. 1, 536 P.2d 265 (Ct.App.1975).

The State argues that the exception to Rule 404 on the issue of identity applies. But at the time the evidence and exhibits concerning the mugshots and albums were received, defendant had already been identified by the victim as the armed robber. It also argues that State v. Jacobs, 91 N.M. 445, 575 P.2d 954 (Ct.App.1978), and State v. Gallegos, 92 N.M. 370, 588 P.2d 1045 (Ct.App.1978), upheld admission of mugshots to prove the accused's identity. In each of those cases, however, the mugshot of the accused was taken after he had been arrested on the charge for which he was being tried, and conveyed no information to the jury that the accused had a *prior* criminal record. The situation here—introduction of a police photo of the accused showing an arrest date two years before the date of the alleged offense—has not been considered previously in this jurisdiction.

Since objection was made that the exhibits were irrelevant and cumulative, we examine the test to determine relevancy. Rule 401 of our Rules of Evidence defines relevant evidence as that which has "any tendency to make the existence of any fact that is of consequence * * * more probable or less probable than it would be without the evidence." Certainly the mugshot albums containing police photos of several hundred arrestees were not relevant to prove defendant's identity, but would be relevant to demonstrate that the victim was capable of identifying defendant out of approximately 200 males of Spanish-American heritage. Thus, the fact of correct identification would be made more probable than not. It was relevant to the credibility of the eyewitness. The photo of defendant extracted from the albums, State's Exhibit 3(a) was relevant to corroborate the victim's in-court identification. But was defendant so prejudiced by the date of his prior arrest shown on the exhibits and his documented association with other prior arrestees, that Rule 403 (N.M.R.Evid. 403, N.M.S.A.1978) excluding relevant evidence should apply?

For this answer we turn to the decisions of other courts, keeping in mind the general rule stated above and the fact that proof of defendant's character had not been offered at the time the exhibits were introduced (nor was it ever) by the defense. In *Roberts v. Commonwealth,* 350 S.W.2d 626 (Ky. App.1961), a conviction was reversed partially because the appellate court was impressed that introduction of a " 'mug' photograph * * * would unquestionably convey to the jury the clear inference that it had been made while appellant was in a police line-up or was in the toils of the law in some manner. There was utterly no excuse for using it at trial in the way it was employed."

Oklahoma has held that it is clearly reversible error to put the defendant's character or reputation at issue before it has been raised by the defendant. *Harvell v. State,* 479 P.2d 586 (Okl.Crim.App.1971).

In *State v. Cumbo,* 9 Ariz.App. 253, 451 P.2d 333 (1969), where mugshots taken at the time of the arrest for the offense charged and which had been altered to

block out the identifying police numbers were admitted, the court declared that suggestion of a criminal record was error and use of the term "mugshot" prejudicially implied a previous criminal record.

And in *Barnes v. United States,* 124 U.S. App.D.C. 318, 365 F.2d 509 (D.C.Cir.1966), the Court of Appeals likened the front and profile mugshot picture introduced in that case to the "wanted" posters so familiar in post offices, motion pictures and television, and found that the inference of a prior criminal record (or, at least, past trouble with the police), was a natural and perhaps automatic response by the jury, and thus impermissibly prejudicial.

■ We believe the element of prejudice was sufficiently called to the attention of the trial court in counsel's objections of irrelevance and cumulativeness for, as our Supreme Court ruled in *Albertson v. State,* 89 N.M. 499, 554 P.2d 661 (1976), an objection based on relevancy implicitly asserts the policy behind the rules prohibiting evidence of prior convictions. It would likewise alert the trial court to the rule of law denying admission of evidence of a prior criminal record when the defendant's character has not yet become an issue for the jury.

■ We hold, therefore, that State's Exhibits 2, 3, and 3(a) were inadmissible under the facts of this case. We hold, further, that considered as a whole, the trial was not a sham, farce or mockery of justice resulting from any conduct of the defense attorney so as to support the claim of ineffective counsel. *State v. Sabo,* Ct.App. No. 2418, decided January 11, 1979.

But having found error in the admission of the exhibits discussed, the crucial question is whether it was reversible error in this case. In *United States v. Rixner,* 548 F.2d 1224 (5th Cir.), *cert. denied* 437 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 248 (1977), the appellate court held that other strong evidence of defendant's guilt and an in-court identification of defendant reduced the erroneous admission of police photographs to harmless error, noting, however, that:

\* \* \* government prosecutors should take heed regarding the introduction of mugshots during trial and if this practice is continued, future cases may very well be reversed.

In-court identification is present in this case. The gas station attendant (the victim), positively linked defendant to the crime, and related several occasions when he had served defendant at this and another gas station where he had previously worked. He recognized defendant's voice, and clearly saw his face on the date of the robbery. He went through one album and half of another before he found defendant's picture. At no time did he deviate from his initial identification. *State v. Gallegos,* 92 N.M. 370, 588 P.2d 1045 (Ct.App.1978). The other prosecution witnesses merely repeated how the attendant had initially described the robbers to the investigating officers, and corroborated his testimony regarding the manner in which he had examined photographs and mugshot albums in identifying defendant. Their cumulative testimony was limited solely to the mechanical procedures of description and mugbook identification by the victim. Their evidence on that single issue at that point in the trial, especially since the defendant had already been identified in court by the victim, had no real purpose other than to imprint upon the jury the defendant's prior criminal character and arouse the prejudices of the jury against the defendant. Compare *State v. Day,* 91 N.M. 570, 577 P.2d 878 (Ct.App. 1978). The same criticism might not be warranted had it been rebuttal evidence.

To determine that the exhibits received through the testimony of the State's police witnesses constituted harmless error, evidence of defendant's guilt must be so overwhelmingly persuasive that under no reasonable probability could the exhibits have induced the jury's finding of guilt. *State v. Day, supra; State v. Self,* 88 N.M. 37, 536 P.2d 1093 (Ct.App.1975); *State v. Mason,* 79 N.M. 663, 448 P.2d 175 (Ct.App.1968). There was substantial evidence from the attendant's testimony alone to support the conviction. The evidence from defendant's alibi witnesses sufficient to shake this

"strong evidence of defendant's guilt" was not forthcoming. They told a plausible story of defendant's presence elsewhere on some January evening, but none of the witnesses could state with any certainty that their recollection of defendant's whereabouts coincided with the date on which the crime was committed. A sister-in-law distinctly knew where he was *the following morning,* and she was the only witness who was sure of a date or time of the month.

We find that proof of defendant's guilt was overwhelmingly persuasive, and the erroneous admission of the exhibits was harmless error. In doing so, however, we take notice that ten years ago this court expressed its disapproval of the use of the term "mugbook" or words having similar import, in criminal trials. *State v. Tapia,* 79 N.M. 344, 443 P.2d 514 (Ct.App.1968). It is apparent that, after testimony from the victim, all of the prosecution witnesses here were called only to tell the jury that identification had been made from a group of photos of parolees, from police albums and an old police photo of defendant on file in the Sheriff's office, and to introduce the "mugshot" and the "mug books." This tactic had to be a deliberate effort to prejudice the jury against the accused since the testimony from those three separate prosecution witnesses added absolutely nothing to what the State's first and principal witness had already told the jury. Offering the exhibits in evidence simply compounded the intended prejudice. Such prosecutorial zeal does not contribute to assurance of a fair trial.

This court would be remiss in its duties if it were not to condemn, for the future, such misplaced fervor. The reversal of criminal convictions is, more often than not, frequently believed to result from an appellate court's oversensitivity to what is popularly termed "mere technicalities." But the responsibility for reversal should not be imputed solely to the court's rightful concerns for constitutional infringements. Many times it should be placed at the feet of unrestrained prosecutors who deliberately, mischievously, and unfairly abuse the rules of evidence. We speak of those who,

well knowing the insidious impact of prejudicial evidence, nevertheless insist upon getting before a jury inadmissible, or even slightly probative but highly questionable, facts which they hope will aid them in obtaining a guilty verdict. We will no longer tolerate prosecutorial references to "mugshots" or "mug books," or the introduction of "mugshots" in a criminal case under the circumstances brought to our attention here. *United States v. Rixner, supra.*

The judgment is affirmed.

IT IS SO ORDERED.

HENDLEY and LOPEZ, JJ., concur.