636 P.2d 883

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Rudy CANDELARIA, Defendant-Appellant.**

No. 5186.

Court of Appeals of New Mexico.

Oct. 27, 1981.

Certiorari Denied Nov. 23, 1981.

Mary Jo Snyder, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Clare E. Mancini, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Acting Chief Judge.

Defendant appeals his convictions of four felonies—criminal sexual penetration in the first degree, criminal sexual penetration in the second degree, aggravated burglary with a deadly weapon and aggravated battery. Issues listed in the docketing statement, but not briefed, were abandoned. *State v. Gallegos*, 92 N.M. 336, 587 P.2d 1347 (Ct.App.1978). Three issues were briefed. We (1) answer two of the issues summarily, and (2) discuss the admission into evidence of a photographic array.

*Issues Answered Summarily*

(a) Defendant asserts that the State failed to prove that the aggravated burglary was committed with a deadly weapon. The victim testified that defendant held a six-to-eight-inch long screwdriver in his hand most of the time he was in the victim's home. Section 30–1–12(B), N.M.S.A. 1978, does not include screwdriver among the specific items listed as deadly weapons; however "deadly weapon," under this statute, includes "weapons with which dangerous wounds can be inflicted[.]"

Although the screwdriver was not introduced into evidence, the jury could determine the factual question of whether a deadly weapon was used "by a description of the weapon and its use[.]" *State v. Gonzales*, 85 N.M. 780, 517 P.2d 1306 (Ct. App.1973). The victim did more than testify that defendant held a six-to-eight-inch long screwdriver. She also testified that at one point defendant was on top of her on the kitchen floor; that defendant held the screwdriver to her throat and told the victim he was going to kill her because she had seen his face. This testimony was sufficient for the jury to find that a deadly weapon was used.

■ (b) The victim testified that defendant had tattoos on his arms. Defendant did not testify and did not exhibit his tattoos to the jury during the presentation of evidence. Defendant requested that he be permitted to exhibit his tattoos to the jury during closing argument. The State objected, pointing out that defendant was proposing to exhibit tattoos other than on his arms: "He's indicated that he has them on the torso." The State pointed out that defendant was attempting to introduce evidence during the closing argument. Defendant replied that the tattoos were not exhibited during the presentation of evidence in furtherance of his "constitutional privilege to remain silent."

The trial court did not err in not allowing defendant to exhibit his tattoos during closing argument. On appeal, defendant recognizes that the proposed exhibition would have been "non-testimonial evidence." Such an exhibition could properly have been introduced as evidence. See *State v. Trujillo*, 30 N.M. 102, 227 P. 759 (1924). Defendant, however, did not seek the exhibition during the presentation of evidence, but during closing argument in order to avoid being questioned concerning the tattoos. Thus, defendant sought an exhibition in order to make a closing argument not based on the evidence. This would have been improper. See *State v. Santillanes*, 81 N.M. 185, 464 P.2d 915 (Ct.App.1970).

### Evidence of a Photographic Array

■ The victim viewed two photographic arrays. Each array consisted of five photographs showing the full face and facial profile of the person photographed. All the photographs were taken by the police and showed a placard containing police identification information—presumably the date of arrest.

The first array contained a picture of defendant's brother, but not of defendant. The trial court admitted the first array only after the police identification information had been cut from the pictures. The second array contained a picture of defendant. The trial court admitted the second array without alteration. Defendant contends this was error; we disagree.

One of defendant's objections to the second array was that defendant was pictured in prison clothing while the persons in the other four photographs were not. Defendant argued that his clothing showed he had been in prison. The argument is spurious; the clothing worn by defendant in the picture is not identifiable prison clothing.

On appeal, defendant contends that the showing of "mug shots" of defendant to the jury was inherently prejudicial and it would have been a simple matter to "sanitize" the photographs, as was done with the first array. Defendant relies on *State v. Gutierrez*, 93 N.M. 232, 599 P.2d 385 (Ct.App. 1979).

Defendant's view seems to be that *State v. Gutierrez* states an absolute prohibition against the introduction of "mug shots" in a criminal case. Such a view is incorrect. *State v. Gutierrez* held that the introduction of mug shots was improper "under the circumstances"; the circumstances in this case are different.

In *Gutierrez*, mug shot albums, as well as the defendant's "mug shot," were introduced into evidence as support for oral testimony identifying defendant as the offender. By "mug shot," we mean a photograph showing the person photographed had a prior arrest. The albums in *Gutierrez* showed defendant's association with other prior arrestees, and defendant's photograph, in *Gutierrez*, showed his prior arrest. The use of these items, in *Gutierrez*, violated Evidence Rule 403. Nothing in *Gutierrez* suggests there was an issue as to whether the defendant had been misidentified.

In this case, defendant claimed misidentification and supported this claim by bringing out that the photographic identification forms for the two arrays, both of which were signed by the victim, reported a positive identification of defendant's brother in the first array and defendant in the second array. Although the prosecution elicited testimony that the report of a positive identification in connection with the first array was inaccurate, the forms, signed by the

victim, supported the misidentification defense.

The prosecution offered the two photographic arrays as evidence to counter the misidentification claim. Defendant's contention, that the second array should not have been admitted without altering the photographs to exclude the police identification, omits important facts. Defendant had already presented the police identification information to the jury; that information was contained on the photographic forms that *defendant* had introduced as evidence.

However, even if those forms were not before the jury, there would have been no error in the admission of the unaltered, second photographic array. When, as here, there is evidence that the victim positively identified both defendant and defendant's brother on the basis of photographs, it was proper for the jury to know exactly what the victim viewed before making an identification. In this situation, both arrays were admissible without alteration; neither array was to be excluded under Evidence Rule 403. Because of the evidence supporting the misidentification defense, the trial court did not err in admitting and permitting the jury to view the second array without alteration.

The judgment and sentences are affirmed.

IT IS SO ORDERED.

WALTERS and DONNELLY, JJ., concur.