6 P.3d 1026

2000-NMCA-060

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Ladell HAYNES, Defendant–Appellant.**

No. 19,659.

Court of Appeals of New Mexico.

March 15, 2000.

Patricia A. Madrid, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Laurel A. Knowles, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

SUTIN, Judge.

{1} Defendant Ladell Haynes appeals his conviction of distribution of cocaine. On appeal, he argues: (1) that double jeopardy barred his retrial after a mistrial caused by the prosecutor and that trial counsel was ineffective in failing to move for dismissal; (2) that the booking photo of him admitted into evidence to bolster the undercover agent's identification of him as the person who sold the agent cocaine was irrelevant and highly prejudicial and its admission constituted reversible error; (3) that the trial court erred in refusing to give his tendered instruction on eyewitness identification; and (4) that his conviction should be reversed because he was not given notice that he was a target of a grand jury investigation. We hold that the trial court erred in admitting the booking photo into evidence and that, under the circumstances of this case, the error is not harmless. We consider the other issues because they would either afford Defendant greater relief or they will arise on retrial. We affirm on those issues.

## FACTS AND PROCEDURAL BACKGROUND

{2} Defendant was accused of selling cocaine to undercover agent Rudy Castro in Alamogordo on August 7, 1996. He was indicted in October 1996, and his case was joined with a case against Richard "Rick" Jackson. Defendant filed a motion to dismiss the indictment based on the fact that he had not been given notice that he was a target of a grand jury investigation. The State responded that target notices were not sent when the matters before the grand jury grew out of undercover investigations. In addition, the State argued that Defendant had failed to show that he was prejudiced by the lack of a target notice. The trial court held an evidentiary hearing and denied the motion.

{3} The case against Defendant and Jackson went to trial on March 24, 1997. During the opening statement, the prosecutor indicated that the evidence would show that Jackson was involved in a second cocaine transaction that took place on August 9, 1996, two days later than the transaction charged in the indictment. At the close of the prosecutor's statement, counsel for Jackson moved for a mistrial, pointing out that the indictment only charged Jackson with the August 7th transaction. Counsel for Defendant joined in the motion. The trial court granted the motion for mistrial. Later, Jackson moved to sever the two cases. The subsequent trials were only of the charges against Defendant.

{4} The case against Defendant went to trial for the second time on September 22, 1997. However, the jury deadlocked and the trial court declared a mistrial based on manifest necessity. Defendant's third trial took place in late February 1998. We will discuss the substance of the testimony in more detail in connection with the issue concerning the admission of the booking photo. At the present, it is enough to note that the main issue was whether Defendant was in fact the person who sold Castro cocaine on August 7, 1996. The only witnesses who testified to the alleged transaction were Castro, who identified Defendant as the person who sold him the cocaine, and Defendant, who testified

that he did not sell Castro cocaine and that there were other black men at the Quik–Stop that day who could be mistaken for him. The jury convicted Defendant and this appeal followed.

## I. Double Jeopardy Did Not Bar Defendant's Subsequent Retrial

{5} Defendant argues that his retrial following the first declaration of a mistrial violates principles prohibiting double jeopardy and that his counsel was constitutionally ineffective because he failed to raise the issue below. In *State v. Breit*, 1996–NMSC–067, 122 N.M. 655, 930 P.2d 792, our Supreme Court discussed the circumstances under which prosecutorial misconduct that results in a mistrial will bar a subsequent trial.

> Retrial is barred under Article II, Section 15, of the New Mexico Constitution, when improper official conduct is so unfairly prejudicial to the defendant that it cannot be cured by means short of a mistrial or a motion for a new trial, and if the official knows that the conduct is improper and prejudicial, and if the official either intends to provoke a mistrial or acts in willful disregard of the resulting mistrial, retrial, or reversal.

*Id.,* ¶ 32.

{6} We will assume without analysis or decision the presence of the first two *Breit* factors. The third factor is determinative: whether the prosecutor intends to provoke a mistrial or acts in willful disregard of the resulting mistrial, retrial, or reversal. When the prosecutor does not intend to provoke a mistrial, "the misconduct necessary to bar a retrial must be extraordinary." *State v. Foster,* 1998–NMCA–163, ¶ 21, 126 N.M. 177, 967 P.2d 852; *see also Breit,* 122 N.M. 655, 930 P.2d 792, 1996–NMSC–067, ¶ 33 (suggesting that double jeopardy will rarely bar retrial when the misconduct is an isolated instance). In *Breit,* the misconduct was pervasive and unrelenting, demonstrating that the prosecutor willfully disregarded the possibility of a mistrial. This Court has indicated that this factor is not met when there is no indication that the misconduct was part of a "plan or scheme to inject unfair prejudice into the trial." *State v. Lucero,* 1999–NMCA–102,

¶ 28, 127 N.M. 672, 986 P.2d 468. Moreover, this Court has held double jeopardy will not bar retrial when the prosecutor's misconduct occurs early in the trial and there is nothing in the record indicating that the prosecution would benefit from a further delay in the matter. *State v. Pacheco,* 1998–NMCA–164, ¶ 14, 126 N.M. 278, 968 P.2d 789.

{7} Defendant argues that the prosecutor's conduct was in willful disregard of the possibility of a mistrial. However, there is nothing in the record that suggests that the prosecutor was attempting to delay the trial in order to gain an advantage. On the contrary, the prosecutor's opening statement indicated that the informant, Mark Jenkins, was going to testify and would identify Defendant as the person who sold Castro the cocaine. For reasons not explained in the record, Jenkins did not testify at the trial that resulted in Defendant's conviction. Thus, the record suggests that the prosecution may actually have been disadvantaged by the delay caused by the misconduct. Moreover, the prosecutor contended that her actions were appropriate because evidence concerning Jackson's involvement in the second transaction was before the grand jury. While this does not make the conduct any less wrongful, it does suggest the possibility that the prosecutor thought that the indictment included this transaction, suggesting that the prosecutor's actions were mistaken or negligent rather than an attempt to inject unfair prejudice into the trial. In short, on this record we think the evidence in the record is open to interpretation and does not compel the conclusion that the prosecutor intended to provoke a mistrial or acted in willful disregard of the possibility of a mistrial.

{8} Defendant also argues that his trial counsel was constitutionally ineffective because counsel failed to file a motion to dismiss arguing that the prosecutor's misconduct raised the bar of double jeopardy against a retrial. In considering this issue, we examine "(1) whether the record supports the motion and (2) whether 'a reasonably competent attorney could have decided that [the] motion . . . was unwarranted.' " *State*

*v. Martinez,* 1996–NMCA–109, ¶ 33, 122 N.M. 476, 927 P.2d 31, (quoting *State v. Stenz,* 109 N.M. 536, 538, 787 P.2d 455, 457 (Ct.App.1990)). However, having determined that the misconduct was not of the character that would bar retrial, we also determine that a reasonably competent attorney could have decided that the motion was unwarranted. Accordingly, we hold trial counsel was not ineffective for failing to file such a motion.

## II. The Trial Court Erred in Admitting the Booking Photo–The Error is Not Harmless

{9} Castro testified that he was working undercover at the time of the transaction. He had been driving around Alamogordo in a pickup truck with the informant Jenkins, looking for Rick Jackson. Jenkins, who was driving, spotted Jackson in the parking lot of the Quik–Stop and pulled in there. Jackson and Defendant were two of five black men in the parking lot at the time. Castro and Jackson went to a pay phone, where Jackson placed a call to his (Jackson's) brother, Max. Castro talked to Max on the phone. Castro and Jackson then walked back to the truck.

{10} Castro and Jenkins got in the truck and were about to pull out of the parking lot when, according to Castro, one of the men came up to the truck and offered to sell Castro a half a gram of cocaine. The seller got in the truck with Castro and Jenkins. While Jenkins drove around the parking lot, the seller handed Castro a plastic bag with a white powder in it. Castro inspected the plastic bag and handed the seller $50. Jenkins then stopped the truck and the seller got out. Castro asked the seller his name and the seller replied "Dale." Castro and Jenkins then left the parking lot. From the time they pulled into the parking lot until the time they left was about 10 or 15 minutes. The transaction occurred at about 5:35 p.m.

{11} Castro and Jenkins took the white powder to Agent Humphries. Castro told Humphries that he had purchased the cocaine from a fellow by the name of Dale who hung around with Rick and Max Jackson. About September 19, Castro was driving around Alamogordo with Agent Artiaga and saw "Dale." Castro pointed out "Dale." Artiaga said "that's Ladell Haynes."

{12} On September 21, Agent Caldwell showed Castro a photo. During trial, Castro identified that photo as a photo of Defendant. Defendant objected and a bench conference was held. The microphones in the courtroom did not pick up the bench conference. However, the parties stipulated that during the bench conference defense counsel objected on the grounds that the photo was irrelevant and that it was more prejudicial than probative because it was a booking photo. The judge overruled the objection and the photo was admitted and shown to the jury.

{13} We have examined the photo that was admitted into evidence. There are no particular markings on the photo. However, the photo is actually two photos, side by side. The first photo shows Defendant facing the camera. The second photo shows Defendant in profile. Behind Defendant are lines marked off to show the height of the person being photographed. We think this is unmistakably a booking photo or, more colloquially, a mugshot. *See Barnes v. United States,* 124 U.S.App.D.C. 318, 365 F.2d 509, 510–11 (1966) ("The double-shot picture, with front and profile shots alongside each other, is so familiar, from 'wanted' posters in the post office, motion pictures and television, that the inference that the person involved has a criminal record, or has at least been in trouble with the police, is natural, perhaps automatic."). The State has not argued otherwise.

{14} Defendant acknowledges that a witness may testify about a prior out-of-court identification of a defendant and that such testimony is not hearsay if the declarant testifies at trial and is subject to cross-examination on the out-of-court identification. *See* Rule 11–801(D)(1)(c) NMRA 2000. Defendant also acknowledges that if an ordinary photo had been used for identification, it could have been introduced. The problem in this case stems from the fact that the photo is obviously a booking photo and therefore indicates that Defendant had previously been in trouble with the law. Defendant contends that under the circumstances of this case, the trial court erred in admitting the booking

photo because it was more prejudicial than probative. He further argues that the error was not harmless. We agree on both points.

{15} Defendant relies on *State v. Gutierrez*, 93 N.M. 232, 599 P.2d 385 (Ct.App.1979). In *Gutierrez*, this Court held that it was error for the trial court to admit mugshots and mugshot albums that a witness used to make an out-of-court identification of the defendant. We noted that there were two types of mugshots—mugshots that were taken on the day the defendant was arrested for the crime on which he is being tried and mugshots that were taken at some previous time and indicate previous trouble with the law. *Gutierrez*, 93 N.M. at 234, 599 P.2d at 387. *Gutierrez* involved a mugshot that was from a previous arrest. Ultimately the *Gutierrez* court held that the error was harmless in large part because the gas station attendant who had been robbed had served defendant on a number of occasions in the past and had recognized defendant immediately during the robbery. *Id.* at 235, 599 P.2d at 388. However, we condemned the use of the term "mugshot" and the introduction of the mugshots from which identification was made. *Id.* at 236, 599 P.2d 385, 599 P.2d at 389. We particularly noted that we would "no longer tolerate prosecutorial references to 'mugshots' or 'mugbooks,' or the introduction of 'mugshots' in a criminal case under the circumstances brought to our attention here." *Id.* Recently, in *State v. Ashley*, 1997–NMSC–049, ¶ 12, 124 N.M. 1, 946 P.2d 205, our Supreme Court quoted with approval our statements in *Gutierrez* condemning the use of mugshots and other indirect means of bringing before the jury the fact that the defendant has a criminal past.

{16} The State argues that New Mexico cases support the admission of the photo. In support of this, the State relies on *State v. Candelaria*, 97 N.M. 64, 636 P.2d 883 (Ct. App.1981); *State v. Johnston*, 98 N.M. 92, 645 P.2d 448 (Ct.App.1982); *State v. Gallegos*, 92 N.M. 370, 588 P.2d 1045 (Ct.App. 1978); and *State v. Mordecai*, 83 N.M. 208, 490 P.2d 466 (Ct.App.1971). However, *Johnston*, *Gallegos*, and *Mordecai* are distinguishable because they involve photos taken on the date the defendant was arrested on the charges on which he was being tried. In other words, the photos in those cases did not indicate that the defendant had a prior record or prior involvement with the police.

{17} The State argues, however, that in *Candelaria* this Court distinguished *Gutierrez* as a case that did not involve the defense of misidentification. The State views *Candelaria* as holding that when misidentification is an issue, the mugshot used to identify the defendant becomes relevant. We do not think *Candelaria* goes so far. In that case, the victim had been shown two photo arrays. *Candelaria*, 97 N.M. at 66, 636 P.2d at 885. The first one had a picture of defendant's brother in it, but not the defendant. The victim identified the brother as the perpetrator. The second array had a picture of defendant but not his brother. The victim then identified defendant. At trial, Defendant argued misidentification based on the original identification of his brother by the victim. We held that "[w]hen, as here, there is evidence that the victim positively identified both defendant and defendant's brother on the basis of photographs, it was proper for the jury to know exactly what the victim viewed before making an identification. In this situation, both arrays were admissible without alteration . . . ." *Id.* at 67, 636 P.2d at 886.

{18} Accordingly, *Candelaria* is factually distinct and does not apply to this case. Castro never identified anyone else as the man who sold him cocaine and did not pick Defendant's picture out of a photo array. Furthermore, the case before us is not one in which the significant issue is that of misidentification, as it was in *Candelaria*. Moreover, in *Candelaria*, it was the defendant that raised and pursued the misidentification issue.

■ {19} With these cases in mind, we turn our attention to the question of whether the probative value of the booking photo outweighed its prejudicial effect. *See* Rule 11–403 NMRA 2000. Both parties agree that the standard of review of this issue is abuse of discretion. *See State v. Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234 (1995). An abuse of discretion occurs when the trial court's ruling is clearly untenable. *Id.*

{20} We recognize that ordinary photos are considered relevant even if they merely corroborate or illustrate the testimony of a witness. *See, e.g., State v. Pettigrew,* 116 N.M. 135, 139, 860 P.2d 777, 781 (Ct.App. 1993); *State v. Baca,* 86 N.M. 144, 520 P.2d 872 (Ct.App.1974). However, when balancing the probative value of evidence against its prejudicial effect, the trial court must consider the availability of other ways to prove the matter. *See State v. Fuson,* 91 N.M. 366, 368, 574 P.2d 290, 292 (Ct.App. 1978). In this case, Castro had identified Defendant in court. He had testified to a prior out-of-court identification of the perpetrator as Defendant while in the company of Artiaga about six or seven weeks after the transaction. He testified that two days after that he was shown a photo by Caldwell and identified the person in the photo as the perpetrator. There was no question that the photo was of Defendant. Later in the trial, Caldwell corroborated the identification and testified that the photo he showed to Castro was a photo of Defendant. Viewed in this context, the photo itself, while relevant, had relatively little probative value. However, its prejudicial effect was relatively strong because it indicated to the jury that Defendant previously had some sort of trouble with the law. Under these circumstances, we hold that the trial court erred in admitting the booking photo of Defendant.

{21} We note this Court's recent opinion in *State v. Rackley,* 2000–NMCA–027, 128 N.M. 761, 998 P.2d 1212,. In *Rackley,* mugshots of the defendant were admitted in evidence because they "provided critical circumstantial evidence linking Defendant to the hold up by showing that Defendant's appearance was consistent with the appearance of the unidentified person seen running near the scene of the crime." *Id.* at ¶ 16. For this reason, and because the defendant stipulated to the fact of a prior felony conviction, we determined that the defendant had "not demonstrated that the trial court's weighing of the probative value of the mugshots against any prejudice to Defendant amounted to an abuse of discretion." *Id.* at ¶ 20. *Rackley* provides us no reason to decide the present case any differently than we do.

{22} The State argues that the introduction of the photo was harmless error because "it is difficult to conclude the booking photo, alone, was instrumental in determining Defendant's guilt." However, the State's argument misconstrues the standard. The erroneous admission of evidence in a criminal case is "prejudicial and not harmless if there is a reasonable possibility that the evidence ... might have contributed to the conviction." *State v. Torres,* 1999–NMSC–010, ¶ 52, 127 N.M. 20, 976 P.2d 20. As we pointed out previously, the only evidence specifically identifying Defendant as the seller of the cocaine was the testimony of Castro. There was no physical evidence that linked Defendant to the transaction. In essence, this case came down to a swearing match between Castro and Defendant. Moreover, we think it important to point out that Defendant took the stand and testified in his own defense. The prosecution did not bring out any prior convictions, suggesting that there were none. Under these circumstances, we think that there was a reasonable possibility that the erroneous admission of a photo that indicates some type of criminal past might have contributed to the conviction.

### III. The Court Did Not Err in Refusing to Give Defendant's Tendered Jury Instruction

{23} We address this issue because it will probably arise on retrial. Defendant contends the trial court erred in refusing to give an instruction regarding identification of a defendant, known as a *Telfaire* instruction, which is a model instruction that was adopted by the United States Court of Appeals for the District of Columbia Circuit in *United States v. Telfaire,* 469 F.2d 552, 558 (D.C.Cir.1972). Our Supreme Court has specifically held that a trial court does not err in refusing a jury instruction concerning identification. *See State v. Ortega,* 112 N.M. 554, 575, 817 P.2d 1196, 1217 (1991). Moreover, in *State v. Gallegos,* 115 N.M. 458, 460, 853 P.2d 160, 162 (Ct.App.1993), this Court specifically held that a trial court does not err by refusing to give a *Telfaire* instruction. We have also specifically recognized that the substance of such identification-related instructions is covered by the uniform jury

**310**

instructions on witness credibility and reasonable doubt. *See State v. Mazurek*, 88 N.M. 56, 58, 537 P.2d 51, 53 (Ct.App.1975). The court, therefore, did not err in refusing to give this proposed instruction.

### IV. The Court Did Not Err in Denying Defendant's Motion to Dismiss for Lack of Target Notice

{24} Defendant moved to dismiss the indictment because the State failed to send him a target notice, informing him that he was the target of a grand jury investigation. The parties stipulated that no target notice had been sent. They also stipulated that if Defendant had received a target notice, he would have testified that he had never met and did not know Castro, that he had no conversation with Castro at the Quik–Stop that day, and that he did not transact a drug sale with him there. After an evidentiary hearing at which an agent testified why notices were not sent during undercover operations, the trial court denied the motion.

{25} On appeal, Defendant contends that he had a statutory right to receive a target notice under NMSA 1978, Section 31–6–11(B) (1981), and that prejudice is presumed when notice is not given. We need not address the merits because Defendant must show, and has not shown, that he was prejudiced by the lack of a target notice. *See State v. Gutierrez*, 119 N.M. 658, 659, 894 P.2d 1014, 1015 (Ct.App.1995) (holding that a defendant is required to show prejudice in order to obtain dismissal of an indictment). In this context, in order to show prejudice, "[t]he defendant must demonstrate that his missing testimony would have changed the vote of the grand jury on the issue of probable cause." *State v. Dominguez*, 115 N.M. 445, 456, 853 P.2d 147, 158 (Ct.App.1993) (citing *State v. Penner*, 100 N.M. 377, 379, 671 P.2d 38, 40 (Ct.App.1983)). The fact that Defendant did not testify before the grand jury does not, by itself, establish prejudice. *Penner*, 100 N.M. at 379, 671 P.2d at 40. Moreover, given the fact that one jury deadlocked and even more so that a second jury convicted Defendant, we cannot say that Defendant's testimony at the grand jury stage would have changed the vote of the grand jury.

### CONCLUSION

{26} The prosecutor's misconduct at the first trial was not so egregious as to raise the bar of double jeopardy to a retrial. The trial court did not err in denying Defendant's motion to dismiss the indictment because he did not receive a target notice, nor did it err in refusing to give Defendant's requested instruction on eyewitness identification testimony. However, under the circumstances of this case, the admission of a mugshot of Defendant was reversible error. Thus, we reverse Defendant's conviction and remand this matter to the trial court. Nothing in this opinion should be construed as indicating this Court's opinion on the appropriateness of another trial in this case.

{27} **IT IS SO ORDERED.**

ALARID and ARMIJO, JJ., concur.