This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-39554

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**SHAWN CASTALDI,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Donna J. Mowrer, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Leland M. Churan, Assistant Attorney General
Albuquerque, NM

for Appellee

Harrison, Hart & Davis, LLC
Nicholas T. Hart
Ramón A. Soto
Daniel J. Gallegos
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**ATTREP, Chief Judge.**

**{1}** Defendant Shawn Castaldi appeals his conviction for one count of receiving stolen property (NMSA 1978, § 30-16-11 (2006)). Defendant argues: (1) the district court erred in denying his motion to suppress evidence because law enforcement's entry onto the property in question was unlawful; (2) his retrial violated his right to be

free from double jeopardy due to prosecutorial misconduct that occurred at his first trial; and (3) his conviction is not supported by sufficient evidence. We affirm.

## DISCUSSION

### I.    The District Court Did Not Err by Denying Defendant's Motion to Suppress

**{2}**    Acting on a tip, members of the Roosevelt County Sheriff's Office arrived at a property to investigate the theft of a trailer.[1] While standing outside a livestock gate at the entrance of the property, deputies observed a moving vehicle near a barn on the property, indicating that someone was present. The deputies climbed over the gate and walked a distance before making contact with Defendant.[2] Defendant voluntarily led officers to the stolen trailer inside a barn on the property. After receiving Defendant's consent to search the remainder of the property, deputies found equipment that had been reported stolen along with the trailer.

**{3}**    Defendant moved to suppress the evidence on the ground that he was subjected to a warrantless search in violation of the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution. At the suppression hearing, Defendant clarified that he was contending "it was unlawful for deputies to climb over the gate and enter the property without a warrant." The district court denied Defendant's motion in a written order. The court observed there was no testimony "regarding the distance from the barn to any home, and there was no argument . . . that the barn was curtilage." The court ruled that the deputies' entry onto the property was similar to a permissible "knock and talk" and was lawful. The court further ruled that Defendant's consent was voluntary and not coerced.

**{4}**    Because the area in question was not protected under the Fourth Amendment and Defendant has failed to advance a timely and developed argument why we should extend broader protections under Article II, Section 10, we affirm the district court's denial of Defendant's motion to suppress. *See State v. Hubble*, 2009-NMSC-014, ¶ 5, 146 N.M. 70, 206 P.3d 579 (providing that when reviewing a trial court's suppression ruling, appellate courts review factual findings for substantial evidence and the application of law to the facts de novo); *see also State v. Randy J.*, 2011-NMCA-105, ¶

---

1For purposes of resolving Defendant's motion to suppress, the district court assumed Defendant owned the property or otherwise had standing to assert constitutional violations.

2Contrary to our Rules of Appellate Procedure, Defendant—without providing citations to the record—references the distance the deputies walked as "nearly a quarter mile," asserts the gate was "locked," and claims that "no trespassing" signs were posted at the property. *See* Rule 12-318(A)(4) NMRA (providing that an argument must contain, among other things, citations to the record proper and transcript of proceedings); *see also Wachocki v. Bernalillo Cnty. Sheriff's Dep't*, 2010-NMCA-021, ¶ 15, 147 N.M. 720, 228 P.3d 504 ("Where a party fails to cite any portion of the record to support its factual allegations, the Court need not consider its argument on appeal."). More concerning, however, these contentions—upon which Defendant's arguments rely—were not established during the suppression hearing. Instead, Defendant's assertions of fact were questions his counsel posed to a deputy at the suppression hearing. "The mere assertions and arguments of counsel are not evidence." *See Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104.

32, 150 N.M. 683, 265 P.3d 734 (relying on the right for any reason doctrine in deciding whether to affirm a district court's suppression ruling).

**{5}** "The touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy" in the area searched. *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (internal quotation marks and citation omitted). With respect to land, an individual's reasonable expectation of privacy is coextensive with the boundaries of curtilage, "the area around the home to which the activity of home life extends." *Oliver v. United States*, 466 U.S. 170, 180, 182 n.12 (1984); *see also State v. Sutton*, 1991-NMCA-073, ¶ 9, 112 N.M. 449, 816 P.2d 518 (providing that the reasonable expectation of privacy inquiry is "inapplicable to areas outside the curtilage for [F]ourth [A]mendment purposes"). Unoccupied, undeveloped lands beyond the curtilage of a home are considered "open fields" not subject to Fourth Amendment protection. *See Sutton*, 1991-NMCA-073, ¶¶ 7, 10. In this case, Defendant concedes in his reply brief, and we agree, that the record does not support a determination that the area in question was curtilage, rendering it "open fields" unprotected by the Fourth Amendment. *See, e.g.*, *id.* (providing that "curtilage is the enclosed space of grounds and buildings immediately surrounding a dwelling house" and that land beyond the curtilage is considered "open fields"). Absent evidence that the officers entered into constitutionally-protected curtilage, there was no unreasonable search within the meaning of the Fourth Amendment. *See Oliver*, 466 U.S. at 177 ("[T]he government's intrusion upon . . . open fields is not one of those 'unreasonable searches' proscribed by the text of the Fourth Amendment."); *Sutton*, 1991-NMCA-073, ¶¶ 7, 10 (providing that "the 'open fields' doctrine permits police officers to enter and search a field without a warrant" because the Fourth Amendment does not apply to open fields).

**{6}** Having conceded that he has no viable Fourth Amendment claim, Defendant asks us to depart from federal precedent and interpret Article II, Section 10 as requiring a case-specific inquiry into whether an individual demonstrated a reasonable expectation of privacy in lands beyond curtilage. We decline to do so in this case. Claims that a state constitutional provision provides broader protection than its federal counterpart are governed by the interstitial framework outlined in *State v. Gomez*, 1997-NMSC-006, 122 N.M. 777, 932 P.2d 1. Under *Gomez*, we may depart from federal precedent in interpreting a state constitutional provision for one of three reasons: "a flawed federal analysis, structural differences between state and federal government, or distinctive state characteristics." *Id.* ¶ 19. Defendant's argument for diverging from the federal "open fields" analysis is raised for the first time in his reply brief.[3] We typically do not address such arguments, *see State v. Fairweather*, 1993-NMSC-065, ¶ 32, 116 N.M. 456, 863 P.2d 1077, because doing so deprives the appellee of the opportunity to respond as contemplated by the rules of appellate procedure, *see State v. Martinez*, 2005-NMCA-052, ¶ 7, 137 N.M. 432, 112 P.3d 293 (declining to consider an argument raised for the first time in a reply brief because doing so would deprive the opposing party of an opportunity to respond). Even were we to consider the reply brief, however,

---

3There is a single reference to "open fields" and a single reference to "reasonable expectation of privacy" in the brief in chief, both in explanatory parentheticals.

Defendant fails to present a developed argument justifying departure from federal precedent in this case.[4]

**{7}** In light of our holdings that Defendant has not made a viable Fourth Amendment claim and that he has failed to advance a timely or developed Article II, Section 10 claim, we need not consider Defendant's remaining arguments pertaining to the district court's denial of Defendant's suppression motion, including that the deputies acted outside the proper scope of a "knock and talk" and that Defendant's consent was tainted by the deputies' unlawful entry. We affirm the district court's denial of Defendant's motion to suppress.

## II.     Defendant's Retrial Was Not Barred by Double Jeopardy

**{8}** Defendant's first trial ended in a mistrial after the prosecutor asked a sheriff's deputy on direct examination whether any stolen property was found in a second barn searched by officers.[5] The deputy's answer implied that additional stolen property had been found, and Defendant requested a mistrial on the basis that the deputy's testimony was highly prejudicial given that Defendant was on trial for receipt of stolen property. The State argued that any error could be cured through additional questions, but the district court granted Defendant's request for a mistrial. Defendant was convicted after his retrial.

**{9}** On appeal, Defendant argues the prosecutor's question constituted prosecutorial misconduct warranting a bar to retrial under the double jeopardy clause of the New Mexico Constitution. Although the State correctly notes that Defendant did not raise a prosecutorial misconduct claim below, we nevertheless address his double jeopardy argument. *See* NMSA 1978, § 30-1-10 (1963) ("The defense of double jeopardy may not be waived and may be raised by the accused at any stage of a criminal prosecution, either before or after judgment."); *see also State v. Breit*, 1996-NMSC-067, ¶ 15, 122 N.M. 655, 930 P.2d 792 (emphasizing "that when a trial is severely prejudiced by

---

4Defendant generally references New Mexico's "unique circumstances" and argues, without pointing to a specific passage, that *Sutton* "implicitly recognized" "the rural nature of [Defendant]'s land likely provided an expectation of privacy that society in New Mexico is prepared to recognize." *Sutton*, however, simply recognized the "*possibility* that . . . differences in custom and terrain gave rise to particular expectations of privacy when the state constitution was adopted," 1991-NMCA-073, ¶ 24 (emphasis added), while specifically declining to reach the question of whether our state constitution calls for an inquiry into the reasonable expectation of privacy in undeveloped lands beyond curtilage. *See id.* ¶ 26 ("[W]e need not at this time address further the scope of the New Mexico state constitutional protection against unreasonable searches and seizures."); *see also Gomez*, 1997-NMSC-006, ¶ 20 (characterizing as dicta *Sutton*'s acknowledgement that "the federal open fields doctrine might clash with privacy expectations in New Mexico where lot sizes in rural areas are often large, and land is still plentiful" (internal quotation marks and citation omitted)). Defendant otherwise fails to develop an argument why the area in question should receive protection under Article II, Section 10 when it enjoys no such protection under the Fourth Amendment. We therefore decline to consider Defendant's state constitutional argument further. *See Randy J.*, 2011-NMCA-105, ¶ 30 (declining to decide an undeveloped state constitutional argument).

5Although these facts were not developed at trial, it appears that while officers were searching the property following the discovery of the stolen trailer, they made note of a separate vehicle they later learned had been reported stolen. Defendant was charged with possession of the second stolen vehicle, but the charges were dismissed prior to the first trial because the owner of the vehicle could not be located.

prosecutorial misconduct, the double-jeopardy analysis is identical, whether the defendant requests a mistrial, a new trial, or, on appeal, a reversal"). Such a claim "presents a mixed question of law and fact. [We] will defer to the district court when it has made findings of fact that are supported by substantial evidence and review[] de novo the district court's application of the law to the facts." *State v. McClaugherty*, 2008-NMSC-044, ¶ 39, 144 N.M. 483, 188 P.3d 1234.

**{10}** Although the prosecutor's conduct at the first trial resulted in a mistrial, this does not necessarily "justify barring a retrial"—"a remedy to be used sparingly." *See State v. Foster*, 1998-NMCA-163, ¶ 21, 126 N.M. 177, 967 P.2d 852. "[R]aising the bar of double jeopardy . . . applies only in cases of the most severe prosecutorial transgressions." *McClaugherty*, 2008-NMSC-044, ¶ 25 (internal quotation marks and citations omitted)). Prosecutorial misconduct rises to this level when

> [(1)] improper official conduct is so unfairly prejudicial to the defendant that it cannot be cured by means short of a mistrial or a motion for a new trial, . . . [(2)] the official knows that the conduct is improper and prejudicial, and . . . [(3)] the official either intends to provoke a mistrial or acts in willful disregard of the resulting mistrial, retrial, or reversal.

*Breit*, 1996-NMSC-067, ¶ 32. The State argues that Defendant has failed to demonstrate the prosecutor's conduct satisfies the *Breit* factors. Assuming without deciding that the first two *Breit* factors have been established, we discuss only the third factor because it is dispositive. *See State v. Haynes*, 2000-NMCA-060, ¶ 6, 129 N.M. 304, 6 P.3d 1026 (assuming without deciding the presence of the first two *Breit* factors because the absence of the third was determinative). Defendant does not argue that the prosecutor intended to provoke a mistrial, so we consider only whether there is evidence to support his argument that the prosecutor acted in "willful disregard of the resulting mistrial." *See State v. Lucero*, 1999-NMCA-102, ¶ 26, 127 N.M. 672, 986 P.2d 468 (internal quotation marks and citations omitted). Willful disregard "connotes a conscious and purposeful decision by the prosecutor to dismiss any concern that [their] conduct may lead to a mistrial." *Breit*, 1996-NMSC-067, ¶ 34. "In *Breit*, the misconduct was pervasive and unrelenting, demonstrating that the prosecutor willfully disregarded the possibility of a mistrial. This Court has indicated that [the willful disregard] factor is not met when there is no indication that the misconduct was part of a plan or scheme to inject unfair prejudice into the trial." *Haynes*, 2000-NMCA-060, ¶ 6 (internal quotation marks and citation omitted). We assess the prosecutor's conduct "in light of the totality of the circumstances of the trial." *Breit*, 1996-NMSC-067, ¶ 40.

**{11}** When the district court inquired why the prosecutor had asked the question about stolen property in a second barn, the prosecutor indicated that he believed no other stolen property had been found, and that he wanted to clarify this for the jury. Although Defendant challenges this explanation on appeal, he did not object below on prosecutorial misconduct grounds. As a consequence, the district court did not have an opportunity to make factual findings regarding the prosecutor's conduct, despite it being in the best position to do so, and the record is not otherwise developed as to whether

the prosecutor acted with willful disregard. *See State v. Turrietta*, 2013-NMSC-036, ¶ 39, 308 P.3d 964 (noting that "[t]he district court was in the best position to evaluate whether any prosecutorial misconduct occurred"); *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964 ("[T]he district court is in the best position to resolve questions of fact."); *see also Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 65, 146 N.M. 853, 215 P.3d 791 ("It is the duty of the appellant to provide a record adequate to review the issues on appeal."). Based on the limited factual record before us, we are unable to conclude that the prosecutor's question alone demonstrates a willful disregard such that retrial should be barred. *See State v. Hernandez*, 2017-NMCA-020, ¶ 29, 388 P.3d 1016 (providing that, "[a]bsent a sufficient record to establish . . . prosecutorial misconduct [under *Breit*], double jeopardy does not bar a retrial of [the d]efendant"); *see also State v. Lewis*, 2017-NMCA-056, ¶ 13, 399 P.3d 954 (observing that although a double jeopardy challenge need not be preserved and may be raised at any time, there must be a factual basis in the record to support the claim); *Haynes*, 2000-NMCA-060, ¶ 6 ("When the prosecutor does not intend to provoke a mistrial, the misconduct necessary to bar a retrial must be extraordinary." (internal quotation marks and citation omitted)).

**{12}** Accordingly, we conclude that Defendant's retrial was not barred by double jeopardy.

### III.    Defendant's Conviction Is Supported by Sufficient Evidence

**{13}** Finally, Defendant challenges the sufficiency of the evidence to support his conviction. In conducting a substantial evidence review, we first indulge all reasonable inferences and resolve any conflicting evidence in favor of the verdict. *State v. Archuleta*, 2012-NMCA-007, ¶ 15, 269 P.3d 924. We then determine whether the evidence, when viewed in this light, "could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (alterations, internal quotation marks, and citation omitted).

**{14}** Defendant challenges only the third element of the crime of possession of stolen property: that he knew or believed the trailer, and equipment inside the trailer, had been stolen. The jury instructions required, in relevant part, that the jury find beyond a reasonable doubt that "[a]t the time [D]efendant acquired possession of or kept this property, [D]efendant knew or believed that it had been stolen." *See* UJI 14-1650(3) NMRA. Knowledge is established where a person "(1) actually knows the property is stolen, (2) believes the property is stolen, or (3) has [their] suspicions definitely aroused and refuses to investigate for fear of discovering that the property is stolen." *State v. Sizemore*, 1993-NMCA-079, ¶ 9, 115 N.M. 753, 858 P.2d 420. "Guilty knowledge is rarely susceptible of direct and positive proof and generally can be established only through circumstantial evidence." *State v. Zarafonetis*, 1970-NMCA-064, ¶ 4, 81 N.M. 674, 472 P.2d 388.

**{15}**     There is substantial circumstantial evidence to support the jury's finding that Defendant knew or believed the trailer and its contents were stolen. At trial, testimony established that an acquaintance of Defendant's, Justin Husted, stole the trailer and brought it to Defendant between 3:30 or 4:00 a.m., that the trailer was damaged, and that Husted was intoxicated and driving erratically during his interaction with Defendant. Although Husted testified that Defendant had no prior knowledge of the theft, he also said he assumed Defendant knew the trailer was stolen when he "showed up with it in the middle of the night." Defendant testified that he agreed to repair the trailer without asking where Husted had acquired it, despite the fact that, according to Defendant's stepfather, Defendant was not in the regular business of repairing vehicles on the property. From this, the jury reasonably could have inferred that Defendant believed the property to be stolen and chose not to investigate for fear of confirming its origin. *See State v. Gonzales*, 1968-NMCA-054, ¶¶ 11-12, 79 N.M. 414, 444 P.2d 599 (concluding that the receipt of property late at night from someone not employed in the business related to that type of good supported a finding of guilty knowledge).

**{16}**     Additionally, a deputy testified that the trailer was located inside the barn behind a motor home, and that several pieces of equipment from inside the trailer were discovered underneath a tarp on the back of a truck belonging to Defendant. From this, the jury reasonably could have inferred that Defendant was attempting to conceal the trailer and equipment, supporting an inference that Defendant knew the property was stolen. *See State v. Brown*, 2010-NMCA-079, ¶ 31, 148 N.M. 888, 242 P.3d 455 (concluding that the use of a tarp to cover a stolen truck "suggest[ed] the truck was being concealed from observation," and that this supported an inference the defendant knew the truck was stolen). Lastly, Husted testified that Defendant paid him $800 to sign a document stating that Defendant had no knowledge that the trailer was stolen. The jury reasonably could have inferred that Defendant paid Husted to influence evidence in his favor, suggesting a consciousness of guilt. *Cf. State v. Ruiz*, 1995-NMCA-007, ¶¶ 9, 14, 119 N.M. 515, 892 P.2d 962 (concluding that evidence of the defendant's violent attempt to dissuade a witness from testifying was probative of consciousness of guilt).

**{17}**     Based on the foregoing, we have no difficulty concluding that substantial evidence supports the jury's finding that Defendant knew or believed the property was stolen.

**CONCLUSION**

**{18}**     We affirm.

**{19}     IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Chief Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**GERALD E. BACA, Judge**